STATE of Missouri, Respondent,

v.

Robert F. DAVIS, Appellant.

No. KCD 26370.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1973.

Robert B. Randolph, St. Joseph, for appellant.

G. Michael O'Neal, Chief Counsel, Crim. Div., Jefferson City, for respondent.

Before SHANGLER, C. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant was charged with murder in the first degree, but the jury found him guilty of only second degree murder and sentenced him to ten years imprisonment. Defendant appeals, alleging five points of error.

I

Defendant first contends that the verdict is not supported by substantial evidence. Consideration of this point requires a brief summary of the relevant facts.

On the morning of July 31, 1971, a fracas occurred on King Hill Avenue in St. Joseph, Missouri, involving defendant, his brother John Davis, and Wendell Jenkins. The witnesses gave radically different versions of what occurred. The State's eyewitness Thomas Hughes testified that defendant and his brother pushed Jenkins from the West side of the street to about the middle of the street and then turned and pushed Jenkins back toward the West. When they had pushed Jenkins to within approximately ten feet of the curb, Jenkins started backing away, at which time defendant pulled a pistol from his belt area and fired two shots in rapid succession, the second of which caused Jenkins to fall. Defendant then went over to Jenkins and stomped him in the face.

The version related by three witnesses for the defense differed completely. According to these witnesses, defendant stopped a car in which he was driving with

his brother when he heard an abusive shout from Jenkins. Defendant got out of the car and went over to remonstrate with Jenkins. Meanwhile, John got out, went to the trunk of the car, and got out a tire tool. John then started into the street toward where defendant and Jenkins were talking. Jenkins broke off talking with defendant, walked over to John, knocked him down, and took away the tire tool. Then Jenkins turned toward defendant, and as he advanced in his direction, he shifted the tire tool from his right hand to his left and made a motion with his right hand toward his right hip pocket. Defendant testified that he was apprehensive that Jenkins was about to draw a revolver, and for that reason, he drew his own pistol and shot Jenkins twice in self-defense.

■ This conflict of testimony presents a classic situation for choice by the jury. As defendant himself expressly recognizes in his brief, "it is not the province of this Court to weigh the evidence and pass upon the credibility of the testimony". Nevertheless, defendant seeks to escape from this general rule upon the theory that Hughes' testimony should be disregarded because it is allegedly contrary to physical facts.

The "physical facts" relied upon by defendant in this regard are two in number. The first of these consists of testimony by the state's pathologist to the effect that he examined Jenkins' body after the fatal shooting and that he found no bruises or other evidence of kicks to Jenkins' face as had been testified by Hughes. This conflict fails to bring the "physical facts" doctrine into play for at least two reasons. In the first place, whether or not defendant kicked Jenkins after the shooting does not go to the essence of any disputed issue. The "physical fact" rule applies only when the conflict of testimony goes to "some vital question in the case." Vaeth v. Gegg, 486 S.W.2d 625, 628 (Mo.1972).

In the second place, the rule sought to be invoked has no application because it in-volves simply a conflict between the oral testimony of Hughes and the pathologist. "The 'physical facts' rule has no application where the credibility of witnesses is involved." Anderson v. Orscheln Bros. Truck Lines, Inc., 393 S.W.2d 452, 460 (Mo.1965). To the same effect: 32A C.J.S. Evidence § 1031(3), p. 705.

■ The remaining basis upon which defendant seeks to find a conflict between Hughes' testimony and physical facts, relates to Hughes' statements concerning the manner in which defendant held his gun and the position in which defendant and Jenkins stood in relation to each other at the time defendant fired his pistol. Defendant attempts to compare Hughes' testimony in this respect with that of the pathologist concerning the entry points and path of the bullets in Jenkins' body. These comparisons fail to properly invoke the "physical evidence" rule. First of all, Hughes' testimony with respect to how defendant held the gun and the position of the parties was not nearly so definitive as defendant tries to argue. For example, Hughes testified that defendant was holding the gun in his right hand, extended "more or less" straight out; he testified that Jenkins did not back exactly straight toward the West side but "kind of south a little bit"; and that when the second shot was fired, Jenkins was standing "more or less" facing the defendant. This testimony constituted mere approximations and falls within the proposition that the "physical facts" rule has no application where variable or doubtful estimates are made with respect to the facts. Anderson v. Orscheln Bros. Truck Lines, Inc., 393 S.W.2d 452, 460 (Mo.1965); 32A C.J.S. Evidence § 1031(3) p. 706. Furthermore, this matter does not go to "some vital question in the case" as required by Vaeth v. Gegg, supra. Moreover, testimony with respect to this type of event can hardly be expected to be precise in every detail, and it is sufficient if the witness can give a generally acceptable portrayal of what occurred. As stated

in Russell v. Gonyer, 264 F.2d 761, 762 (C.A. 1, 1959):

"It is well known that a lay witness' estimates of time, speed and distance, particularly those made in a flash at the moment of occurrence of a dramatic event, are almost certain to be inaccurate and for that reason are not to be relied upon implicitly. With this in mind the court was entitled to accept the testimony of the witness as painting a general picture of the event, even though his testimony could not be made to coincide in every detail with established physical facts."

Even if the testimony of Hughes were wholly disregarded as to defendant kicking Jenkins after the shooting, the manner in which defendant held his gun, and the precise position of defendant and Jenkins with respect to each other at the time of the shooting, there would still remain sufficient other evidence given by Hughes to support the conviction. Conflicts in the respects mentioned did not destroy that other testimony given by Hughes, but could only affect the weight to be accorded and Hughes' general credibility. That was a matter for the jury, not for this Court.

## II

Defendant's next point complains of the following question asked by the trial court of the jury panel on voir dire:

"The Defendant, Robert Davis, is charged with the crime of murder in the first degree. If you should find him guilty of murder in the first degree, the punishment is either life imprisonment or death. If, after hearing all of the evidence and the Court's instructions and the arguments of attorneys, you believe beyond a reasonable doubt that Robert Davis is guilty of murder in the first degree, do any of you have scruples, opinions, or beliefs that would preclude you from voting for a verdict of guilty because the Defendant might receive the death penalty? If your answer is 'yes', please raise your hand."

■ Defendant objected to this question on the ground that it was in violation of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The *Witherspoon* decision has no application here. That decision laid limitations upon the type of question which could be put to a jury with respect to their conscientious scruples against capital punishment; but as held in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), *Witherspoon* has no effect where the death penalty has not been imposed. That penalty, of course, has not been imposed in the instant case. The same ruling was made by the Missouri Supreme Court in State v. Pollard, 447 S.W.2d 249 (Mo.1969); State v. Crow, 486 S.W.2d 248, 251 (Mo.1972), State v. Adams, 497 S.W.2d 147, 153 (Mo.1973), and State v. Wallace, 503 S.W.2d 67 (Mo. 1973). As a matter of fact, the recent cases outlawing the death penalty has rendered this whole question purely academic. State v. Granberry, 484 S.W.2d 295, l.c. 298 (Mo. banc 1972).

■ Defendant further argues that this question presented to the jury panel was improper in that it attempted to commit the jurors in advance to how they would vote. The question here is clearly not subject to that criticism. The question asked here is readily distinguishable from the questions asked in State v. Pinkston, 336 Mo. 641, 79 S.W.2d 1046 (1935) and State v. Katz Drug Company, 352 S.W.2d 678 (Mo. banc 1961), relied upon by defendant.

Defendant also tries to analogize the question here to an instruction, and argues that the question (construed in the light of an instruction) unduly emphasizes the fact that defendant was charged with first degree murder. The simple answer to this argument is that the question was not an instruction. The whole purpose of the question was to ascertain the beliefs and scruples of the members of the panel with

respect to capital punishment, and in order to delve into that question at all, some emphasis upon the nature of the charge was inevitable and unavoidable.

## III

Defendant's next point is that he was prevented from arguing to the jury that an adverse inference should be drawn from the State's failure to produce witnesses, Debra Hughes and Nellie Hornbuckle. Debra Hughes, the wife of Thomas Hughes, and Nellie Hornbuckle, his mother, were riding in the front seat of the automobile being driven by Thomas Hughes at the time of the shooting which is the subject matter of the present prosecution. The names of Debra Hughes and Nellie Hornbuckle were endorsed upon the information by the state, and defense counsel attempted to reach these witnesses, but his calls to them were never returned and he was unable to interview them. On the basis of these facts, defendant claims that these witnesses were hostile to the defense and that the defendant should have been permitted to argue to the jury an inference that the State did not produce them as witnesses because their testimony would have been adverse to the State.

The trial judge ascertained that these two witnesses were not employees of the State nor were they related in any way to the prosecutor or to the deceased, and accordingly found that the witnesses were equally available to both parties, so that no adverse inference arose from the prosecutor's failure to call these witnesses. No fault can be found with that ruling. Defendant lays much emphasis upon the fact that the names of these two witnesses were endorsed upon the information, but that fact is of no significance. State v. Beasley, 353 Mo. 392, 182 S.W.2d 541, l.c. 544 (1944).

Moreover, the evidence by these two witnesses would have been purely cumulative to that of Thomas Hughes. Un-

der these circumstances, the failure by the state to call the additional witnesses cannot give rise to any adverse inference. State v. Wallach, 389 S.W.2d 7 (Mo.1965).

## IV

Defendant's next point is that the trial court precluded him from showing that two weeks prior to the fatal shooting, Jenkins had quarrelled with and shot at defendant's brother, John Davis, and that one week before the shooting, Jenkins had again accosted John Davis with a gun and had made threats against him. Although the trial court refused an offer of proof with respect to those facts, he did allow the defense to prove that the deceased had a bad reputation for violence and for carrying a gun; that the deceased had made a threat to kill defendant; and that the reason that defendant was carrying a gun on the occasion in question was because he knew that the deceased and others "had been messing with my brother and all of them carried guns"—that his brother was having this trouble and receiving threats and that he intended to give that gun to his brother. The trial court further permitted John to testify that he had seen the deceased with a gun on two occasions.

The ruling by the trial court excluding the offer of proof was proper. The rule is well-established in Missouri that when a defendant seeks to justify on the basis of self-defense, he can show his reasonable apprehension because of the violent character of the deceased. However, this matter of character can only be shown by general reputation, not by proof of specific acts of violence against persons other than the defendant. State v. Nelson, 484 S.W.2d 306, l.c. 308 (Mo.1972).

Defendant cites and seeks to rely upon State v. Creighton, 330 Mo. 1176, 52 S.W. 2d 556 (1932). The *Creighton* case is readily distinguishable. That decision held that the defendant there was entitled to show that the deceased was drunk and in a belligerent and ugly mood within a half

hour before the shooting charged. The court held that under those circumstances, the evidence of the preliminary facts were admissible to show that the same condition existed so as to affect deceased's mental state when he encountered the accused. Obviously, the half hour interval in the *Creighton* case is not analogous to the far longer intervals present here.

## V

Defendant's fifth and final point is that the State's verdict-directing instruction "ignored" his defense of self-defense. In this connection, defendant cites State v. Winn, 324 S.W.2d 637 (Mo.1959) and State v. Gabriel, 301 Mo. 365, 256 S.W. 765 (1923) seemingly for the proposition that in every case where the defendant relies on self-defense, the State's verdict-directing instruction must specifically negative that defense.

Preliminarily, it should be pointed out that the cases cited have no application to instructions regarding second degree murder, as here, where one of the elements of the case is malice aforethought. The case law in Missouri is firmly established that the instruction on the element of malice aforethought is inconsistent with and necessarily excludes the concept of self-defense, so that an instruction on second degree murder need not specifically mention self-defense in express terms. State v. Lewis, 248 Mo. 498, 154 S.W. 716 (1913); State v. Glass, 318 Mo. 611, 300 S.W. 691 (1927); State v. Demaree, 362 S.W.2d 500 (Mo. banc 1962); State v. Cook, 428 S.W. 2d 728 (Mo.1968).

However, regardless of whether it was necessary for the State's verdict-directing instruction on second degree murder to include specific reference to the matter of self-defense, Instruction No. 6 given by the court did so. Thus Instruction No. 6 required that the jury find among other elements that "the defendant acted with malice aforethought, that is, without just cause or excuse, such as self-defense, as defined in Instruction No. 8 * * *". Defendant admits that Instruction No. 8 was a proper and sufficient instruction on the matter of self-defense. Nevertheless, defendant argues that the reference to the matter of self-defense in Instruction No. 6 above-quoted is objectionable because he claims that the phrase "such as" belittles and disparages the defense. It is true that an instruction which tends to disparage a legal defense is erroneous. State v. Eaves, 362 Mo. 670, 243 S.W.2d 129, 130 (1951); State v. Crowell, 149 Mo. 391, 50 S.W. 893 (1899); State v. Smith, 358 Mo. 1, 212 S.W.2d 787 (1948); State v. Johnson, 267 S.W.2d 642 (Mo. 1954). However, the instruction here has no similarity to the instructions given in those cases and is clearly not subject to any criticism of disparaging self-defense.

Defendant also argues that Instruction No. 6 is contrary to Missouri Bar Proposed Pattern Criminal Instructions, Forms 6.02 and 6.06 and the notes thereunder. Defendant's argument fails because it is premised on forms and notes which have been superseded [1] and the current forms do not support his argument.[2] In any event, any argument based upon the Proposed

1. The earlier draft required that whenever there was to be an instruction on self-defense, then the verdict-director was to contain a special sentence in the following form: "In determining whether the defendant is guilty of murder in the second degree you must consider other instructions herein submitting whether or not defendant acted in self-defense."

2. The current proposed form of verdict-director for second degree murder provides with respect to justification such as self-defense for inclusion of the following: "Fourth, that the death of [name of victim] was not (a justifiable homicide) (an excusable homicide) (a justifiable homicide or an excusable homicide) as submitted in (Instruction No. ——) (Instruction No. —— and Instruction No. ——)". *Instruction No. 6 given in the present case complies with the general sense of the Proposed Pattern Criminal Instruction, and in fact, grants more to defendant than he would receive under the new Pattern Instruction.*

Pattern Criminal Instructions misses the mark, since those instructions were not in effect at the time of the trial herein, nor for that matter are those proposed instructions even now in effect.

There being no error, the judgment is affirmed.

All concur.