STATE of Missouri, Respondent,

v.

Paul N. WALLER, Appellant.

No. 73488.

Supreme Court of Missouri,
En Banc.

Sept. 10, 1991.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

Appellant Paul Waller appeals from convictions of voluntary manslaughter, § 565.-023.1(1), RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. Following the holding of *State v. Buckles*, 636 S.W.2d 914, 922 (Mo.banc 1982), and cases cited therein, the Missouri Court of Appeals, Western District, affirmed the judgment. *Buckles* reaffirms the rule prohibiting admission of evidence of the victim's prior acts of violence, known to the defendant at the time of the incident, to support defendant's assertion that he acted justifiably in reasonable apprehension of bodily harm. After affirming the judgment, the court transferred the case to this Court for reexamination of the law. Today this Court abrogates the holding of *Buckles*, reverses the judgment, and remands the case for new trial.

Appellant does not challenge the sufficiency of the evidence. The evidence showed that, on February 10, 1989, appellant and a companion, David Todd, visited Sheila Oldenburg's apartment in Sedalia, Missouri. When appellant arrived, Oldenburg and the victim, Larry Tyler, former boyfriend of Oldenburg and father of her

child, were sitting with the child on a couch in the living room of the apartment.

Appellant asked Oldenburg whether she could baby sit for him. Oldenburg replied that she could not. As appellant and Todd prepared to leave the apartment, Tyler asked appellant about twenty dollars that appellant owed Tyler. Appellant indicated that he had the money and for Tyler to come and get it.

While factual dispute exists as to subsequent events, there is no dispute that appellant hit Tyler several times with a maul handle or similar object. As a result of the beating Tyler suffered brain injuries and died approximately three weeks later, on March 3, 1989.

At trial appellant asserted the defense of self-defense. The trial court instructed the jury on second degree murder, voluntary manslaughter, involuntary manslaughter, armed criminal action, and self-defense. The jury found appellant guilty of voluntary manslaughter and armed criminal action.

■ In the first issue on appeal, appellant claims that he was denied the right to a fair trial when the trial court excluded evidence of Larry Tyler's prior act of violence against David Todd. Appellant contends that the evidence was relevant to appellant's claim of self-defense because appellant had knowledge of the prior act; therefore, the evidence would have demonstrated that appellant acted justifiably in reasonable apprehension of bodily harm.

Missouri has long adhered to the rule that evidence of the victim's specific acts of violence having no connection with the defendant is inadmissible. *See State v. Duncan*, 467 S.W.2d 866, 867–68 (Mo.1971), and cases cited therein.[1] Missouri has followed what had been the general rule, until recent decades. *See* Annotation, *Admissibility on issue of self-defense (or defense of another), on prosecution for homicide or assault, of evidence of specific acts of violence by deceased, or person assaulted,*

*against others than defendant,* 121 A.L.R. 380, 382 (1939). In *Duncan* this Court noted two bases for excluding evidence of the victim's specific acts of violence committed against third parties: (1) character should be judged by the general tenor and current of a life, not by a mere episode in it; and (2) evidence of specific acts would likely raise numerous collateral issues that would lengthen trials, cause unfair surprise to witnesses, and divert the minds of the jurors from the main issue. *Id.* at 868. This Court followed the rule enunciated in *Duncan* in *State v. Maggitt,* 517 S.W.2d 105, 107 (Mo.banc 1974), and most recently reiterated the rule in *State v. Buckles,* 636 S.W.2d 914 (Mo.banc 1982):

> On the issue of self-defense there can be no doubt of the rule that evidence of the deceased's reputation for turbulence and violence is admissible as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed; but such evidence must be proved by general reputation testimony, not specific acts of violence, and defendant must show he knew of such reputation when the issue is reasonable apprehension.

*Id.* at 922.

Other jurisdictions' holdings on the issue include additional arguments in support of excluding evidence of the victim's specific acts of violence committed against third parties. Compilation provides five principal reasons for retaining the present rule: (1) A single act may have been exceptional, unusual and uncharacteristic; an isolated episode does not provide a true picture of the character of a person. The potential for unfair prejudice is great. *See Duncan,* 467 S.W.2d at 868; *Henderson v. State,* 234 Ga. 827, 218 S.E.2d 612, 615 (1975); *State v. Jacoby,* 260 N.W.2d 828, 838 (Iowa 1977). (2) Numerous collateral issues could be raised, resulting in a lengthy trial. *See id.* (3) Collateral issues might cloud the real issues and confuse the jury. The jury could be led to consider the victim's character to infer that the victim acted in conformity with former conduct. *See id.* (4)

1. Although *State v. Duncan* contains the most thorough recent discussion of the issue presented in this case, there was no claim in *Duncan* that the defendant was aware of the victim's prior acts of violence.

The state cannot anticipate and prepare to rebut every specific prior act of violence of a deceased victim. *See Henderson*, 218 S.E.2d at 615; *Jacoby*, 260 N.W.2d at 838. (5) Since the state cannot introduce evidence of the defendant's past acts of violence, the defendant should not be permitted to benefit from evidence of specific acts of the victim. To allow the evidence creates a double standard favorable to the defendant. *See Williams v. State*, 565 S.W.2d 503, 505 (Tenn.1978).

An examination of recent cases reveals, however, that several jurisdictions that had long adhered to the rule of evidence Missouri has followed have abandoned the rule. *See, e.g., Commonwealth v. Fontes*, 396 Mass. 733, 488 N.E.2d 760, 762 (1986); *State v. Tribble*, 428 A.2d 1079, 1085 (R.I.1981); *People v. Miller*, 39 N.Y.2d 543, 349 N.E.2d 841, 848, 384 N.Y.S.2d 741, 748 (1976). The trend of decisions is toward admission of such evidence, now the rule in a majority of jurisdictions.[2]

Although the considerations underlying the rule prohibiting admission of specific acts of violence against third persons are valid, there are compelling reasons to adopt the majority rule. A defendant prosecuted for homicide or assault may claim, as a defense, that use of physical force upon the alleged victim was not unlawful because it was necessary to protect himself or others from the victim's aggression. § 563.031, RSMo 1986. A defendant may assert the defense, however, only where his belief

that he was subject to an imminent attack is a reasonable belief. The defendant's state of mind, therefore, is critical. The paramount purpose of rules of evidence is to ensure that the trier of fact will have before it all relevant, reliable, and probative evidence on the issues in dispute. *Tribble*, 428 A.2d at 1085. Since the defendant's state of mind is of such significance, it is important that the defendant be able to relate reasons for his or her state of mind. *State v. Smith*, 10 Ohio App.3d 99, 460 N.E.2d 693, 696–97 (1983). "The fact that the circumstance creating apprehension is a single act or series of acts, instead of a general character, does not necessarily destroy its capacity to create apprehension." *Tribble*, 428 A.2d at 1084 (quoting 2 J. Wigmore, *Evidence*, § 248 at 61 (3d ed. 1940)). Knowledge that the victim recently engaged in specific acts of violence is likely to have greater effect on a defendant's state of mind than knowledge of the victim's general reputation for violence. *Fontes*, 488 N.E.2d at 763. "A demonstrated capacity for acts of extreme violence will no doubt instill a fear more quickly and more deeply than a veiled threat or knowledge of a generally violent proclivity." *Miller*, 349 N.E.2d at 847, 384 N.Y.S.2d at 747. "A jury assessing the reasonableness of the defendant's reaction to the events leading to the homicide should in fairness have that information." *Fontes*, 488 N.E.2d at 763. "[T]he highly probative nature of such relevant evidence, in an appropriate case, far outweighs any prejudice

2. *Amarok v. State*, 671 P.2d 882 (Alaska App. 1983); *State v. Young*, 109 Ariz. 221, 508 P.2d 51 (1973); *Halfacre v. State*, 277 Ark. 168, 639 S.W.2d 734 (1982); *People v. Wright*, 39 Cal.3d 576, 217 Cal.Rptr. 212, 703 P.2d 1106 (1985); *People v. Lyle*, 200 Colo. 236, 613 P.2d 896 (1980); *Ruffin v. State*, 50 Del. 83, 123 A.2d 461 (1956); *Johns v. United States*, 434 A.2d 463 (D.C.App.1981); *State v. Smith*, 573 So.2d 306 (Fla.1990); *State v. Basque*, 66 Haw. 510, 666 P.2d 599 (1983); *People v. Adams*, 71 Ill.App.3d 70, 27 Ill.Dec. 277, 388 N.E.2d 1326 (1979); *Holder v. State*, 571 N.E.2d 1250 (Ind.1991); *State v. Edwards*, 420 So.2d 663 (La.1982); *Williamson v. State*, 25 Md.App. 338, 333 A.2d 653 (1975); *Commonwealth v. Fontes*, 396 Mass. 733, 488 N.E.2d 760 (1986); *People v. Kerley*, 95 Mich.App. 74, 289 N.W.2d 883 (1980); *State v. Irby*, 368 N.W.2d 19 (Minn.App.1985); *State v.*

*Jennings*, 96 Mont. 80, 28 P.2d 448 (1934); *Burgeon v. State*, 102 Nev. 43, 714 P.2d 576 (1986); *State v. McCarter*, 93 N.M. 708, 604 P.2d 1242 (1980); *People v. Miller*, 39 N.Y.2d 543, 349 N.E.2d 841, 848, 384 N.Y.S.2d 741, 748 (1976); *State v. Barbour*, 295 N.C. 66, 243 S.E.2d 380 (1978); *State v. Smith*, 10 Ohio App.3d 99, 460 N.E.2d 693 (1983); *Harris v. State*, 400 P.2d 64 (Okla.Cr.App.1965); *Commonwealth v. Stewart*, 483 Pa. 176, 394 A.2d 968 (1978); *State v. Tribble*, 428 A.2d 1079 (R.I.1981); *Williams v. State*, 565 S.W.2d 503 (Tenn.1978); *Medina v. State*, 639 S.W.2d 947 (Tex.Cr.App.1982); *Randolph v. Commonwealth*, 190 Va. 256, 56 S.E.2d 226 (1949); *State v. Upton*, 16 Wash.App. 195, 556 P.2d 239 (1976); *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983); *State v. Daniels*, 160 Wis.2d 85, 465 N.W.2d 633 (1991); *State v. Goettina*, 61 Wyo. 420, 158 P.2d 865 (1945).

caused by the admission of such evidence." *Tribble*, 428 A.2d at 1084.

To adopt the majority rule is not so profound a departure from Missouri's present rule as might first appear. Missouri courts currently admit evidence of the victim's prior acts of violence upon the defendant. *See, e.g., State v. Hafeli*, 715 S.W.2d 524, 530 (Mo.App.1986). To distinguish between violent acts directed at the defendant and acts directed toward third persons of which the defendant has knowledge is a blurred distinction; the significant factor is the defendant's awareness at the time of the incident of the victim's past violent behavior, not the target of the violence. *Miller*, 349 N.E.2d at 847, 384 N.Y.S.2d at 747.

■ Weighing the considerations underlying the majority and minority rules, in conjunction with present Missouri authority on the general question of admission of evidence relevant to the victim's behavior, this Court concludes that the present Missouri rule should be abrogated. Where justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged.

■ To the extent that this Court has changed the rule, it vests new discretion in the trial court. In application of the new rule, courts must exercise caution. The defendant must lay a proper foundation before the evidence can be admitted. Other competent evidence must have raised the question of self-defense. *Fontes*, 488 N.E.2d at 763. The defendant must show that he was aware of the specific act or acts of violence. *Tribble*, 428 A.2d at 1085. The incidents must not be too remote in time and must be of quality such as to be capable of contributing to the defendant's fear of the victim. *Miller*, 349 N.E.2d at 847, 384 N.Y.S.2d at 747. Where acts are too remote in time or of a quality substantially different from the act that the defendant accuses the victim of committing, the trial court may decline to admit the proof into evidence. *Id.*

■ The trial court must caution the jury that the evidence is to be considered solely with regard to the reasonableness of the defendant's apprehension that the victim was about to inflict bodily harm upon the defendant, and not for the purpose of establishing that the victim probably acted in conformity with prior acts of violence. *Tribble*, 428 A.2d at 1085; *Miller*, 349 N.E.2d at 847, 384 N.Y.S.2d at 747. The trial court should caution the jury that the character of the deceased and the deceased's specific past violent acts are not otherwise relevant to the issues before them.

■ Also within the trial court's discretion rests the responsibility to place limitations on the extent to which prior violent acts may be proved. While the defendant should be permitted to substantiate his claim of justification because it informs the jury on the state of the defendant's mind at the time of the incident, and thereby enables the jury to decide whether defendant acted rationally under the circumstances, the trial court should not allow the progress of a criminal trial to become unnecessarily slowed by evidentiary conflicts over matters of questionable relevance.

■ Having reexamined the law and concluded it appropriate to adopt the rule announced, this Court is left to determine whether the appellant in this case should be granted a new trial. Arguing against the grant of a new trial, the state contends that the additional evidence would have been merely cumulative and would not have changed the jury's perception of appellant's self-defense claim. The state notes that the jury had before it evidence that the victim was violent when intoxicated, that the victim was intoxicated at the time of the incident, and that appellant acted in response to his knowledge of the victim's reputation. The state relies on *State v. Minor*, 755 S.W.2d 318 (Mo.App. 1988). In *Minor* the court held that "[a]ny error in excluding testimony is harmless where testimony of similar import is subse-

quently introduced without objection." *Id.* at 320.

The evidence cited by the state includes the testimony of Sheila Oldenburg that Tyler had a reputation for sometimes being violent when consuming alcohol and that almost anything could "set him off." Oldenburg also testified that she had discussed Tyler's reputation in appellant's presence. She testified that Tyler had been drinking when he arrived at the apartment the evening of the beating and that he engaged in an argument with another man at her apartment before appellant arrived. Within the previous year she had seen Tyler with a club similar to the weapon used by appellant.

Several others testified concerning Tyler's condition and behavior during the evening of the beating. A neighbor who administered first aid testified that she smelled alcohol on him. Two police officers testified that Tyler appeared intoxicated. The doctor who first treated Tyler in the emergency room testified that he "was fairly belligerent, combative to us, abusive toward us and the nursing staff" and that "he had a strong odor of alcohol on his breath" and was "obviously intoxicated." The police were summoned to the hospital because Tyler was "starting to be combative."

Appellant testified in support of his claim that he acted in self-defense. According to his testimony, he did not know that Tyler would be at Oldenburg's apartment. When appellant arrived Tyler appeared to be intoxicated. When appellant left the apartment, Tyler followed him into the hallway and commenced to swing a club at him. After the third blow appellant knocked the club from Tyler's hands and Tyler returned to the kitchen. Appellant followed him. Tyler grabbed a large knife. Appellant went back into the hallway and retrieved the club. Tyler came after him with a knife. After several swings with the club, appellant knocked the knife from Tyler's hands. The fight moved into the kitchen and then into the living room. Appellant hit Tyler four to seven times with the club and the entire fight took, at most, four

minutes. Appellant feared that Tyler was going to kill or seriously hurt him because Tyler was drunk, and appellant knew Tyler's reputation for being "crazy" when he was drunk. Even after Tyler lost the knife, appellant believed that he was defending himself because Tyler continued to fight back.

In view of the reasons for changing the rule of evidence, testimony of "similar import" was not introduced. The defense was founded upon appellant's belief that he was subject to an imminent attack, and that his belief was reasonable. In additional support of appellant's defense of self-defense, appellant sought, through pretrial proceedings and by offer of proof at the conclusion of trial, to introduce evidence of Tyler's prior violence to David Todd, the person who accompanied appellant to Oldenburg's apartment. Appellant offered deposition testimony by Sheila Oldenburg that several months prior to the incident Oldenburg witnessed Tyler push open a door at David Todd's house and swing a club similar to the one used by appellant in his attack on Tyler. Tyler struck Todd and, perhaps, another person. According to the offer of proof, appellant would also have testified that he was aware of the incident.

The proffered evidence, if believed by the jury, would be probative on the question of reasonableness of defendant's apprehension for his own safety. This Court cannot conclude that there is no significant probability that the jury might have credited the defense of justification had it been apprised of the victim's prior specific act of violence. As noted above, knowledge that the victim recently engaged in specific acts of violence is likely to instill fear in the mind of the defendant more quickly and more deeply than knowledge of the victim's general reputation for violence. *Fontes,* 488 N.E.2d at 763; *Miller,* 349 N.E.2d at 847, 384 N.Y.S.2d at 747. As a consequence, the perceptions and the state of mind of the participants in the altercation are critical to the defense of justification. Under these circumstances, the jury should be permitted to consider proof that the defendant was aware of Tyler's prior violent attack

on Todd. As noted above, it is within the trial court's discretion to determine the extent to which and manner in which the incident may be proved.

■ Appellant raises a second point, which may arise on retrial. Appellant claims that the trial court erred in submitting a jury instruction patterned after MAI–CR 3d 302.04. In that instruction "proof beyond a reasonable doubt" is defined as proof which leaves the jurors "firmly convinced" of the defendant's guilt. Appellant contends that this definition impermissibly lowers the standard of proof imposed upon the state in a criminal case. This Court has consistently rejected appellant's argument. *See State v. Wacaser,* 794 S.W.2d 190, 195 (Mo.banc 1990). Appellant's second point is without merit.

The judgment is reversed and the cause is remanded for new trial.

ROBERTSON, C.J., and HOLSTEIN and BLACKMAR, JJ., concur.

HIGGINS, Senior Judge, dissents in separate opinion filed.

RENDLEN, J., and HOUSER, Senior Judge, dissent and concur in dissenting opinion of HIGGINS, Senior Judge.

BENTON, J., not participating because not a member of the Court when case was submitted.

HIGGINS, Senior Judge, dissenting.

I dissent, respectfully, from the majority opinion in its reversal of conviction and remand for new trial.

Paul N. Waller was convicted of voluntary manslaughter of Larry Tyler and related armed criminal action. He concedes the sufficiency of evidence to sustain his convictions.

· Waller claims, nevertheless, that he should be awarded a new trial because the trial court excluded defendant's proffered evidence of a prior act of violence by the victim, Larry Tyler, against a third person, one David Todd. This claim does not qualify as a charge of reversible error because the trial court's exclusionary ruling was consistent with the traditional rule of evidence in Missouri that evidence of a victim's specific acts of violence having no connection with the defendant is inadmissible. *State v. Duncan,* 467 S.W.2d 866 (Mo.1971); *State v. Maggitt,* 517 S.W.2d 105 (Mo.banc 1974); *State v. Buckles,* 636 S.W.2d 914 (Mo.banc 1982).[1]

In order to accomplish its reversal and remand, the majority abrogates the traditional Missouri rule by a deference to rules of evidence employed in other jurisdictions. The rationale of those rules does not persuade an override of the five concededly valid reasons recited by the majority, at 215, in support of the Missouri rule. The majority's new rule, although purporting to vest "new discretion in the trial court," is accompanied by a caveat that the courts "must exercise caution" in application of the new rule. The majority then gives directions in seven situations requiring precautionary instructions to the jury with respect to its considerations. No such admonitions or limitations on the trial court's discretion have been considered necessary in administering the existing rule. Because of necessity under the new rule, numerous collateral issues will be raised where the victim has engaged in various previous encounters with third parties in attempts to demonstrate his violent and turbulent nature. This will, in turn, cause trials to be lengthened, issues to be clouded and juries to be confused. A trial could be thus subverted and converted to a trial of the victim instead of a trial of the defendant.

I would not use this case to nullify the Missouri rule and overrule the cases that have applied it consistently and without difficulty. I would, instead, continue to recognize the rule as "sound, practical and logical," *Duncan,* 467 S.W.2d at 869, and,

---

1. By way of contrast, Missouri does provide for admission of evidence of a victim's prior acts of violence if directed to the defendant personally.

See for discussion, distinction and application, *State v. Hafeli,* 715 S.W.2d 524, 530 (Mo.App. 1986).

on the unchallenged sufficiency of evidence, affirm the judgment of conviction.