**STATE of Missouri, Respondent,**

v.

**Reginald PERRY, Appellant.**

**Reginald PERRY, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58053, 59910.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 29, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Henry Robertson, St. Louis, John Klosterman, Columbia, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals a jury conviction for murder in the first degree and armed criminal action, as well as the denial of his Rule 29.15 motion. He was sentenced to consecutive terms of life without parole and three years. We affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial was as follows. On February 15, 1989, Defendant was residing with his father, Ivory Perry. Defendant was 24 years old. At approximately noon, Defendant and Father rode home together from Father's office. Upon their arrival at home, the two spoke about the progress of Father's campaign for Eighteenth Ward Alderman.

An argument ensued when Father told Defendant that Father would be taking a vacation in Houston. Defendant replied that he would also take a vacation when he received a Social Security check for which he had applied. Defendant then decided the Social Security check would not provide him with sufficient income. Defendant was unemployed at the time. Defendant told Father he would rather commit suicide than live on Social Security. Father replied, "Go ahead." Defendant obtained a bottle of aspirin from the bathroom and returned to the kitchen to get some water. Father ordered Defendant to put down the aspirin. Defendant refused. Father reasoned with him, and Defendant eventually put the aspirin on the counter and started up the stairs to his room. Defendant heard Father pick up the telephone and assumed he was calling Malcolm Bliss Hospital, where Defendant had previously been treated. Defendant told Father that if he called Malcolm Bliss, Defendant would kill himself. Defendant went into the kitchen and got a small paring knife. He then threatened to kill both Father and himself. When he realized that the small knife would not be sufficient to achieve this objective, he exchanged it for a large butcher knife. Defendant approached Father, saying, "Daddy, we got to go." Father grabbed Defendant in a headlock in an attempt to obtain the knife. Father pleaded with Defendant to give him the knife. At this point, Defendant stabbed Father in the chest. Father grabbed the knife blade, but Defendant pulled it away and stabbed Father again. Defendant stabbed Father four times.

Defendant immediately turned himself in to the police. At the police station, he announced, "I just killed my father." The police found Father lying on the floor in his residence, unconscious. He did not regain consciousness before dying.

While in custody, Defendant gave a total of four statements confessing to the crime, including a taped audio statement, and a videotaped statement. In these statements, Defendant did not mention any threats made to him by Father, or that he feared physical abuse.

At trial, Defendant testified on his own behalf. He called no other witnesses in his defense, which was that he had stabbed Father in fear of his own life. The jury found Defendant guilty of both first degree murder and armed criminal action. Defendant filed a Rule 29.15 motion on September 17, 1990. The motion court conducted an evidentiary hearing on this mo-

tion on February 1, 1991, and denied the motion.

Defendant first complains about the exclusion of evidence of his father's alleged mental disease. He asserts the trial court erred in sustaining the State's objection to this evidence during Defendant's opening argument and the State's motion *in limine*. Defendant argues he was prejudiced because this evidence would have been relevant to the issues of Defendant's apprehension of danger, who was the aggressor in the struggle, and Defendant's deliberation.

■■■ Defendant apparently sought to introduce testimony regarding Father's alleged mental condition through both Defendant and Defendant's mother. Defendant now contends he would have shown that Father suffered from a mental illness which could cause him to become aggressive and violent, and that Defendant recognized that Father was entering a violent episode at the time of the stabbing. However, Defendant failed to make an offer of proof on this testimony. An offer of proof is necessary to insure that the trial court and opposing counsel understand what evidence is being offered, and its relevance to the case. *State v. Townsend*, 737 S.W.2d 191, 192[1–3] (Mo. banc 1987).

■■■ Further, the trial court was correct in its ruling on what evidence was admissible and what evidence was not. The rule of law in Missouri, recently announced by Missouri's Supreme Court, is that "[w]here justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged." *State v. Waller*, 816 S.W.2d 212, 216 (Mo. banc 1991). Specific acts of violence by the victim are admissible when the acts are directed toward the defendant. *Id.* *See also, State v. Williams*, 784 S.W.2d 309, 312[3] (Mo.App. 1990), *State v. Arney*, 731 S.W.2d 36, 40 (Mo.App.1987).

In the instant case, the trial court closely followed these rules. It sustained the State's objection to any evidence of treatment Father had received prior to the day of the stabbing. However, the court allowed defense counsel to question Defendant regarding prior threats or specific acts of violence by Father against Defendant. Defendant testified:

Mr. Niehoff: Let me ask you, were you afraid of your father?

Defendant: Um not before the incident.

Mr. Niehoff: Had he ever threatened you before?

Defendant: Yes.

Mr. Niehoff: Okay. So you remember precise dates or incidents where he threatened you?

Defendant: No.

\* \* \* \* \* \*

Mr. Niehoff: Had he ever threatened you physically, physical harm?

Defendant: Yes.

Mr. Niehoff: When did those occasions occur?

Defendant: I'm not quite sure.

Mr. Niehoff: Can you remember any instances at all, specifics?

Defendant: Hum-um, no.

This testimony, admitted by the court, was also relevant to the issues of Defendant's apprehension of danger, who was the aggressor, and Defendant's deliberation. Given that Defendant could not recall any specific prior acts of Father's aggression toward Defendant, it is difficult to determine how evidence of Father's alleged mental instability could have helped Defendant's claim of self-defense. Defendant did not show, through the necessary offer of proof, how Father's supposed mental illness was relevant to Defendant's state of mind. Point denied.

■■■ In his second point, Defendant argues the trial court erred in sustaining the State's objection to Defendant's offered testimony that he had attempted suicide in the past. Defendant contends his suicide threat and Father's indifferent response precipitated the struggle, and he therefore should have been allowed to show the seri-

ousness of the threat. He alleges this would have shown his state of mind, thus negating the element of deliberation, establishing adequate cause for sudden passion and showing a basis for his belief that he was in fear of his life.

Defendant's own testimony fails to support his argument that his suicide threat combined with Father's indifferent response precipitated their struggle. Defendant testified that Father reasoned with him when he got out the aspirin, immediately after the suicide threat, and told him to put it down. Father's response was clearly not indifferent. Defendant was allowed to testify as to his state of mind before the struggle. This alone, and not past suicide attempts, was key to the issues of deliberation, sudden passion, and fear for his life. Point denied.

Defendant next argues the trial court erred in overruling Defendant's objection to the prosecutor's statements in closing argument concerning the lack of psychiatric testimony about Defendant's psychiatric history. Defendant claims this was an impermissible adverse inference, and wrongfully shifted the burden of proof to Defendant to show his diminished capacity.

The prosecutor's statements to which Defendant objects were as follows. In opening summation, the prosecutor stated: "There was no evidence that [Defendant] was crazy." Defense counsel then stated in his closing argument:

> Here's a man hospitalized again and again, he's been on medication, he's in an emotional situation.... I think you can infer, since [Defendant], on the stand, said that he's been hospitalized in the past, ... I think you can infer that he has a mental problem.

This drew further comment from the prosecutor in closing: "I mean, he is the one who tells you about this big self-defense thing. He is the one who tells you he's crazy.... Did you hear from a doctor who said he was crazy?" At this point, defense counsel objected, arguing that this improperly shifted the burden of proof to Defendant, to show he did have diminished capacity. The trial court overruled the objection.

■ "The trial court has broad discretion in controlling closing argument, and its ruling on argument of counsel will be reversed only for an abuse of discretion where the argument is plainly unwarranted." *State v. Henton,* 753 S.W.2d 19, 20 (Mo.App.1988). The State may argue an adverse inference from a defendant's failure to produce evidence which could be reasonably expected to be in the defendant's favor. *Id.* When the State argues such an inference, the burden of proof does not shift to the accused. *Id.* While the prosecutor's argument that Defendant did not bring in expert witnesses could be considered an adverse inference argument in a broad sense, *see Henton,* 753 S.W.2d at 20[1], we resolve this issue on another ground.

■ The State argues, and it is clear from a reading of the transcript, that the prosecutor was attacking Defendant's credibility.

> [A]n accused criminal defendant may bring his own credibility into issue either indirectly through his defense attorney in opening statement, summation or otherwise, or directly by taking the witness stand and testifying. In so doing if the defendant makes it appear that ... a potential witness could exonerate the defendant, then, to that extent, the prosecuting attorney has a right to comment.

*Henton,* 753 S.W.2d at 21[2], *citing Romero v. State,* 435 So.2d 318, 320 (Fla.Dist.Ct. App.1983). In this case, expert witnesses could potentially have exonerated Defendant through their testimony regarding his mental condition. Defendant's testimony that he had been repeatedly hospitalized and medicated for a mental condition invited the State's argument. Thus the State's argument was not improper.

■ Defendant also suggests we review for plain error the State's alleged argument that "Defendant deliberated even if he meant to kill himself." The statements to which Defendant objects were made in the State's closing argument.

The question is, of course, whether he's planning his own [death] or his father's,

but he's clearly planning to kill someone, so there is deliberation.... But we do have deliberation, the only question is over what, suicide or otherwise? ... Those are his words. 'We both got to go. We both got to die.' He's already decided that his father has got to die. He's decided and he's made a decision then, he has deliberated.

Relief should rarely be granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explication. *State v. Wood,* 719 S.W.2d 756, 759[5] (Mo. banc 1986). "Plain error affecting substantial rights may be considered on appeal although not properly preserved for review, but only where there is a 'sound, substantial manifestation ..., a strong, clear showing, that injustice or miscarriage of justice will result' if relief is not given." *Id., citing State v. Meiers,* 412 S.W.2d 478, 480–481[1] (Mo.1967). A review of the prosecutor's remarks indicates that he was arguing to the jury that Defendant may have deliberated the commission of suicide, but that he certainly deliberated Father's murder. We cannot say that this argument demonstrates a strong and clear showing that injustice or a miscarriage of justice resulted.

■ Defendant finally suggests the motion court clearly erred in denying his amended Rule 29.15 motion. He contends the findings of fact and conclusions of law are unsupported by the record in that counsel failed to adequately investigate Defendant's psychiatric history or to develop evidence of diminished capacity by means of a psychological evaluation. Our review of the motion court's findings is limited to whether its findings, conclusions, and judgment are clearly erroneous. *Day v. State,* 770 S.W.2d 692, 695[1] (Mo. banc 1989), *cert. denied* sub nom *Walker v. Missouri,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141.

■ The State argues that the issue of whether counsel failed to adequately investigate Defendant's psychiatric condition was not contained in Defendant's Rule 29.15 motion and was therefore waived. We agree. Because this complaint of ineffective assistance of counsel asserted on appeal was not pled under a motion to vacate, it was waived. *Blakely v. State,* 795 S.W.2d 570, 572[1] (Mo.App.1990). Defendant's presentation of evidence relating to this claim at the evidentiary hearing is irrelevant. In Rule 29.15 motion hearings, an issue cannot be tried by implied consent of the parties. *See Rohwer v. State,* 791 S.W.2d 741, 743[5] (Mo.App.1990).

■ The motion court's ruling on Defendant's other complaint of ineffective assistance of counsel, that a psychological evaluation should have been done, was not clearly erroneous. At the evidentiary hearing, the trial counsel testified that he had obtained Defendant's medical records from Malcolm Bliss and had noted that three different diagnoses of Defendant existed. Counsel testified he felt this weakened the possibility of using mental disease or defect as a viable defense. He further stated that he had considered having a psychological evaluation of Defendant done, but rejected the idea:

> [I]f I would have gotten an order from the judge to have a psychiatric evaluation I knew that the State would also get a copy of it, and ... I'm sure they'd find out he made threatening gestures towards his father in the past, and since we were sort of leaning toward the self-defense at the time and I thought we had jury sympathy on our side, I didn't want that sort of information coming out....

We find the motion court's ruling that this was not an unreasonable trial strategy to be correct. Point denied.

Judgment affirmed.

PUDLOWSKI, P.J., and STEPHAN, J., concur.