STATE of Missouri, Respondent,

v.

Richard NYHUIS, Appellant.

Richard NYHUIS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 63601, 66905.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 26, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Richard Nyhuis, appeals from a judgment of conviction, following a jury trial, for capital murder. He was sentenced to a term of life imprisonment without possibility of probation or parole for fifty years. Defendant also appeals from the denial of his Rule 29.15 motion following an evidentiary hearing. We affirm.

In November of 1988, skeletal human remains were discovered in a remote location at the S Bar F Boy Scout Ranch in St. Francois County. The victim had been buried in a shallow grave and covered by a white powdery substance which had originally been lime.

A forensic anthropologist who specialized in identifying skeletal remains of unknown victims made a facial reconstruction from the skull. The anthropologist provided the Missouri State Highway Patrol with a photograph of the facial reconstruction. He also gave them an estimation of the victim's age, height and weight, and informed them that the victim was an Asian female. After the Highway Patrol published the photograph, it received a phone call stating that the photograph resembled defendant's wife, Bunchee Nyhuis.

The Highway Patrol contacted defendant and inquired about his wife. Defendant stated that she had left him in December of 1983. He said he had last seen his wife when he had dropped her off at the airport. Defendant claimed he had no idea where his wife could be found, and that he knew of no surviving relatives in her native Thailand. He provided the Highway Patrol with photographs of his wife.

The photographs provided by defendant and photographs obtained from wife's immigration file were sent, along with photo-

graphs of two other missing females, to the forensic pathologist for overlay comparison with the skull. The pathologist determined that the skull was compatible only with the photographs of wife.

Defendant was confronted with this information while he was vacationing with his sons at the Boy Scout ranch where the skeleton was discovered. The Highway Patrol questioned defendant extensively about his wife's disappearance. Defendant related varying accounts of the events surrounding her disappearance. His final videotaped confession revealed that defendant and wife had been fighting about a new house that wife had wanted to build, but that defendant did not think they could afford. They were in the basement of their home. At some point, wife threatened to disappear with their two sons in Thailand. As wife became more angry, defendant got up to leave the room. Wife lunged at defendant, scratching his face and biting him. Defendant pushed her back; she fell and hit her head on the base of a steel support post. After wife fell, she lay on the floor bleeding badly and screaming for a doctor. Instead of summoning help, defendant placed his hand over her mouth and nose until she stopped moving. When defendant failed to find a pulse or heartbeat, he placed a plastic bag over wife's head to contain the bleeding, wrapped her up in a sheet of plastic, and locked her in their deep freezer. The next morning he called his employer to tell him that his wife had left him and that he needed to make arrangements for child care. Defendant waited until March, when the ground had softened, to bury wife's body at the ranch.

The state's expert witness, Dr. Mary Case, pathologist and Chief Medical Examiner for St. Charles County, examined the wife's skull following the discovery of her remains at the ranch. Dr. Case found a small depressed fracture in the left parietal area of the skull. The inside of the skull revealed a slightly larger area where the external fracture had been pushed inside. Dr. Case determined that the injury occurred prior to wife's death and that it had been caused by a small blunt instrument striking the skull. She believed that because wife's injury covered a very small area, it could not have been caused by the fall described by defendant. Dr. Case further stated that if the wound was left untreated it could only have caused wife's death if medical attention was not properly sought. She opined that wife could have eventually died from suffocation or some other act that was no longer apparent because of the remains' decomposition. She testified that it would take approximately one minute of oxygen deprivation to render a person unconscious, and an additional three minutes of deprivation to suffocate that person.

Defendant does not deny that he contributed to wife's death and that he attempted to conceal her death. However, throughout trial and here on appeal, defendant characterized wife's death as an unfortunate accident, denying any deliberation. Dr. Jay Dix, the Boone and Callaway County Medical Examiner, opined that the fracture could have occurred as defendant described and that death could have been caused by the fracture to the skull alone. However, he could not rule out suffocation or other causes. He disagreed with Case's conclusion that the fracture had been caused by an object hitting the skull, although he conceded that was possible.

In his first point, defendant claims the trial court committed plain error when it admitted into evidence the skull, jaw and various bones of wife, and erred in failing to declare a mistrial in response to the state's displays of wife's skull and skeletal remains.

 In his first sub-point, defendant contends the trial court erred in admitting wife's skeletal remains into evidence because their prejudicial effect outweighed their probative value. Defendant failed to object to the admission of this evidence on the ground now asserted in this appeal. Thus, we review for plain error, granting relief only if the error so substantially affects the defendant's rights that a manifest injustice or miscarriage of justice occurs if left uncorrected. *State v. Watts*, 813 S.W.2d 940, 944 (Mo.App.E.D.1991); Rule 30.20.

 "The admission of demonstrative evidence lies largely within the trial court's discretion." *State v. Ford*, 867 S.W.2d 681,

684 (Mo.App.E.D.1993). "Demonstrative evidence is admissible if it establishes a fact at issue, throws light on the issue, or aids the jury in any way in arriving at the correct verdict." *Id.* The trial court's decision may be overturned only if it constitutes an abuse of discretion. *State v. McMillin,* 783 S.W.2d 82, 101 (Mo. banc 1990).

In *State v. Broadnax,* 572 S.W.2d 224, 227 (Mo.App.1978), the defendant objected to the admission of a bloodstained iron, a bloodstained baseball bat, a bloodstained wig, blood samples removed from the top and sides of the iron, and two fibers of hair removed from the floor immediately under the iron as unduly inflammatory. The court concluded that the trial court had not abused its discretion in admitting these items because they met one or more of these criteria for admission: tending to connect the accused with the crime, proving the identity of the deceased, showing the nature of any wounds, corroborating the testimony of the state's witnesses, or throwing any relevant light upon any material matter in issue. *Id.*

■ Here, the state offered the skeletal remains to illustrate the wounds and to demonstrate how wife was identified. The cause of death, the nature of the victim's wound, and the identity of the victim were at issue.[1] The skull and bones helped to illuminate these issues and were thus probative. The trial court did not abuse its discretion in admitting the skeletal remains.

■ In his second sub-point, defendant asserts the state flaunted wife's remains in front of the jury throughout the trial. Defendant argues the trial court erred in failing to declare a mistrial upon his request, because the repeated display was orchestrated to inflame the passions and prejudices of the jury.

■ The declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no

other way. *State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987). The trial court is in the best position to evaluate whether extraordinary circumstances exist, so review of the trial court's decision is limited to whether it abused its discretion, thereby causing exceptional prejudice to defendant. *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).

The record demonstrates that when the prosecutor brought the skull out to use in conjunction with a witness's testimony, he or the witness would temporarily set it down. Defendant would object, sidebar, to its placement. The trial court would sustain the objection and direct the prosecutor to return the skull to a table holding the other evidence after he was done using it with a witness. In each case, defendant was granted the relief he requested. The trial court took great pains, in sustaining defendant's objections, to limit any undue prejudicial effect the skeletal remains had. We find no abuse of discretion. Defendant's first point is denied.

■ In his second point, defendant challenges the sufficiency of the evidence. He argues that the state did not prove wife's death was not the result of accident or misfortune.

■ "In considering whether the evidence is sufficient to support the jury's verdict, we must look to the elements of the crime and consider each in turn." *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). "[W]e are required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. We disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Id.*

---

**1.** Defendant contends he had not challenged, at trial, the fact that the skeletal remains were his wife's. However, review of the record reveals that defendant vigorously challenged the state's evidence during cross-examination of the state's expert witness as to the identification of the remains. However, even if defendant had stipulated to the victim's identification, the state would not have been barred from presenting evidence on that fact. *See State v. Black,* 748 S.W.2d 184, 187 (Mo.App.1988).

Capital murder, as defined by the statute in effect at the time of the victim's murder is as follows:

> Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.

§ 565.001, RSMo 1978. For an act to be done with deliberation under this statute, it must be done in a cool and deliberate state of mind. *State v. Ingram*, 607 S.W.2d 438, 443 (Mo.1980). A deliberate act has been defined as a "free act of the will," and not while under the influence of a violent or sudden passion aroused by provocation. *Id.* "A homicide committed accidentally or unconsciously will not support a conviction for capital murder." *State v. Malady*, 669 S.W.2d 52, 54 (Mo.App.E.D.1984).

In *State v. Branch*, 757 S.W.2d 595, 598 (Mo.App.1988), the defendant quarreled with her husband throughout the day of his death and expressed her intention to leave him due to the deterioration of their marriage. *Id.* She shot and killed her husband that night. *Id.* After the shooting, she attempted to conceal her involvement in the crime. *Id.* She put new sheets on the bed to hide the blood on the mattress, deliberately delayed calling for assistance until after her husband was dead, and fabricated the story she told the police about the shooting. *Id.* The court found these facts sufficient to establish that the defendant killed her husband after deliberation.

The facts of our case are analogous to those in *Branch.* Like Branch, defendant had quarreled with the victim throughout the day. The Nyhuis marriage had deteriorated to a point that wife had threatened to disappear in her native Thailand with their two sons. Defendant, like Branch, fabricated the story he told police about the crime. As did the defendant in *Branch*, defendant here attempted to conceal his involvement in the crime. He stored wife's body in a locked freezer for over three months until the ground thawed, buried her body in a remote area, and covered it with lime to speed its decomposition. Where Branch put new sheets on a bed, our defendant laid down new carpet. Where Branch delayed in calling for assistance, defendant here never called for assistance after his wife fell. He, instead, covered her mouth and nose until he could feel no pulse.

Furthermore, the nature of wife's death supports the inference defendant coolly deliberated on the matter. At trial, an expert testified it would take approximately four or five minutes of oxygen deprivation to suffocate a person. The expert also testified that people normally become unconscious after being deprived of oxygen for one minute. This gave defendant sufficient time to coolly reflect on what he was doing after his wife was unconscious.

Even assuming, as defense counsel argues, defendant removed his hand before his wife expired, defendant still did not call for assistance, but rather let her die, wrapping her up in plastic and locking her in a deep freezer. These facts, and the reasonable inferences therefrom, are sufficient to establish that defendant killed wife after deliberation. Defendant's second point is denied.

In his third point, defendant contends the trial court erred in precluding him from presenting evidence of wife's specific acts of violence against defendant's and wife's children.

Where justification is an issue in a criminal case, the defendant may be permitted to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge. *State v. Waller*, 816 S.W.2d 212, 216 (Mo. banc 1991). However, the acts sought to be established must be reasonably related to the crime with which the defendant is charged. *Id.* Before such evidence can be admitted, the defendant must lay a proper foundation. *Id.* Other competent evidence must raise the issue of self-defense. *Id.* The defendant must demonstrate that he was aware of the specific act(s) of violence. *Id.* The incidents must not be too remote in time and must be of a quality as to be capable of contributing to defendant's fear of the victim. *Id.*

During direct examination, defendant testified about specific acts of violence he had observed wife commit against their sons.

The trial court permitted this testimony despite the state's objection that a foundation in accordance with *Waller* was lacking. However, during cross examination, defendant stated that he had not feared his wife when she lunged at him because of anything she had done to the boys. After that admission, any further testimony concerning the victim's acts of violence against the boys was clearly inadmissible under *Waller* because the acts, by defendant's own admission, were not "... of [a] quality such as to be capable of contributing to the defendant's fear of the victim." *Id.*

The trial court did not abuse its discretion in precluding defendant from eliciting testimony from his sons which was irrelevant to his claim of justification. Point three is denied.

We have reviewed defendant's remaining points on his direct appeal and find that no jurisprudential purpose would be served by a written opinion. The points are denied. Rule 30.25(b).

Defendant's final points concern his Rule 29.15 motion. We have carefully reviewed the record. The trial court's judgment is based on findings of fact that are not clearly erroneous; no error of law appears. A written opinion on these points would have no precedential value. Defendant's points of error relative to his Rule 29.15 motion are denied. Rule 84.16(b).

Defendant's judgment of conviction is affirmed. The denial of defendant's Rule 29.15 motion is affirmed.

CRAHAN, P.J. and DOWD, J., concur.