STATE of Missouri, Plaintiff–Respondent,

v.

Jim Edward RYAN, Defendant–Appellant.

No. 27872.

Missouri Court of Appeals, Southern District, Division Two.

July 23, 2007.

Ellen H. Flottman, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Roger W. Johnson, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Jim Edward Ryan ("Defendant") was convicted by a jury of murder in the first degree, a violation of Section 565.020,[1] and armed criminal action, a violation of Section 571.015. On appeal, he argues that the trial court erred in: (1) not allowing evidence regarding specific acts of violence committed by Victim; (2) refusing to instruct the jury on voluntary manslaughter; and (3) overruling Defendant's motion for new trial. We affirm.

Viewed in the light most favorable to the verdict, the record reveals the following. Rebecca Kullie ("Rebecca"),[2] and her hus-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. We refer to the witnesses by their first names for purposes of clarity. No disrespect is intended.

band, John Kullie ("Victim") lived with her brother Johnny Ryan and his girlfriend Pattie Coy in a mobile home in Lamar, Missouri. Defendant, who was Rebecca's adopted brother, did not live at the mobile home, but would stay there on occasion with his wife, Oleta, and his girlfriend, Evette Noe ("Evette").

On May 25, 2005, Victim was resting in the back bedroom of the mobile home after an evening of "partying" at a neighbor's house, where he had consumed alcohol and Xanax.[3] Rebecca was in the kitchen of the mobile home, while Defendant, Oleta, Evette, Michael Wilkinson ("Michael"), and Zachary Dominguez ("Zachary") were in the living room. At some point during the evening, a small dog went into the room where Victim was resting, and Rebecca heard the dog growling. Oleta went to the bedroom, retrieved the dog, and came out cursing.

At some point thereafter, Defendant went outside and returned carrying a bumper jack.[4] As he was walking toward the back bedroom where Victim was located, Defendant looked at Rebecca and smirked. Rebecca heard a thump and heard Victim say "No. Don't. Stop. Why?" When she ran into the bedroom, she saw Defendant swinging the jack at Victim, and saw that Victim was gurgling blood and had an open cut on the side of his neck. When Rebecca tried to stop Defendant he threatened to kill her, so Rebecca ran next door and called 911. Michael and Zachary also heard three or four loud blows from the bedroom after they had seen Defendant go back there with the jack. Victim died as a result of his injuries.

After attacking Victim, Defendant and Evette went to a neighbor's house and Defendant asked the neighbor if she could "put [him] up." After Evette informed the neighbor that Defendant had killed somebody, the neighbor said she could not hide Defendant and that she would have to turn him in. Defendant then hid in the brush near Victim's home, where he was later discovered and arrested. When Defendant was arrested, he told officers, "I wasn't going to let him beat me." After Defendant was given the *Miranda* warnings, he spoke with police, but told them he could not remember what had happened.

Dr. Keith Norton performed an autopsy on Victim and determined the following: Victim died of multiple blunt injuries to his head and neck; he had fourteen lacerations on his body caused by five to fourteen blows; he had defensive wounds on his arms; and he had large amounts of alcohol and Xanax in his bloodstream, a combination that would have sedated a person and impeded his ability to respond quickly to an emergency.

Defendant was charged by felony information with murder in the first degree and armed criminal action, and following a change of venue, he was tried before a jury in Cedar County. Defendant testified on his own behalf at trial. His version of what happened was as follows: he saw Victim choking a little dog and he told him to stop, to which Victim responded, "[y]ou want some of it?"; Defendant got the women out of the house because Victim appeared angry and he thought he was going to wreck the place; when Defendant stepped outside he saw the jack, and brought it inside to get Victim to "turn

---

**3.** Xanax is a drug used to treat anxiety.

**4.** A bumper jack is a metal stand, two-and-a-half to three feet long with a metal base and a large metal device with a ratcheting handle, which was used for changing the tires on older model cars.

loose of the ... dog"; when Defendant went into the bedroom, Victim threw the dog at him and pressed down on the jack which was resting on Defendant's foot; Defendant fell on top of Victim and the two exchanged blows; as Defendant was trying to get up Victim kicked him in the groin area knocking him against the wall; as Victim was grabbing Defendant's foot, Defendant swung the jack at Victim hitting him in the face or throat area; he hit Victim with the jack a total of three times; Defendant thought that he was fighting for his life.

The jury found Defendant guilty of murder in the first degree and armed criminal action. Defendant was sentenced by the trial court to consecutive sentences of life in prison without the possibility of parole for first degree murder and ten years for armed criminal action. This appeal followed.

Defendant brings three points on appeal. In his first point, he argues that the trial court abused its discretion in not allowing certain testimony regarding Victim's prior acts of violence towards Rebecca. Defendant maintains that the exclusion of such evidence violated his right to a fair trial and to present a defense, because the evidence was relevant to Defendant's claim of self-defense. We disagree.

We review a trial court's ruling regarding the admissibility of evidence for abuse of discretion. *State v. Kaiser*, 139 S.W.3d 545, 557 (Mo.App. E.D.2004). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

Where justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged.

*State v. Waller*, 816 S.W.2d 212, 216 (Mo. banc 1991). The trial court must use caution in exercising its discretion under this rule, and "the defendant must lay a proper foundation before the evidence can be admitted." *Id.* A defendant may be permitted to present evidence of a victim's prior specific acts of violence only where: (1) other competent evidence has been presented raising the question of self-defense; (2) the defendant shows that he was aware of the specific act or acts of violence; (3) the incidents are not too remote in time; (4) and the incidents are of a quality capable of contributing to the defendant's fear of the victim. *Id.* "Where acts are too remote in time or of a quality substantially different from the act that the defendant accuses the victim of committing, the trial court may decline to admit the proof into evidence." *Id.*

In the present case, the trial court ruled that it would allow evidence of Victim's prior abuse of Rebecca if Defendant injected the issue of self-defense and laid a foundation that he was aware of specific acts of violence by Victim that were not too remote in time and were capable of contributing to Defendant's reasonable fear. Consistent with that ruling, the trial court allowed Defendant to testify regarding his knowledge of Victim's prior acts of violence, but disallowed testimony from Rebecca and another witness on that subject. Defendant testified that Rebecca had told him that Victim was violent. Defendant explained that in 2002, Rebecca had a black eye which she said Victim had given to her. Defendant also testified that, in 2002, Victim wrecked the house and threatened to kill Defendant, his step-

son and his wife, and when Defendant tried to leave, Victim hit his car with an axe handle. The trial court sustained the State's objection to questions about incidents of abuse before 2002. Following Defendant's testimony, the trial court ruled that it would not allow additional evidence of abuse.

After the trial court ruled that Defendant could not cross-examine Rebecca regarding instances of Victim's prior physical abuse towards her, Defendant made an offer of proof by questioning Rebecca outside the jury's presence. Rebecca said that there were a couple of incidents, occurring prior to 2003, where Victim had struck her. She did not remember how many incidents of physical abuse there had been, but she said it was between two and ten. On two occasions, Rebecca had filed charges against Victim for physical abuse. Rebecca said that Defendant "fully knew everything that was going on."[5]

Later, Defendant made another offer of proof, in which Victim's neighbor, Claire Martin ("Claire"), testified that Rebecca had mentioned that Victim had physically abused her, when they lived elsewhere. The trial court's ruling regarding evidence of abuse remained the same.

■ The evidence which Defendant presented by way of an offer of proof does not meet the criteria articulated in *Waller*. Regarding Defendant's altercation with Victim, Defendant testified that Victim threw a dog at him, pressed down on the jack which was resting on his foot, pulled on Defendant's leg and kicked Defendant in the groin. Defendant's proposed evidence established that Victim had on prior occasions abused Rebecca, but no details were given of such abuse. Such evidence fails to demonstrate that the prior acts were of a similar quality as those allegedly committed by Victim preceding the attack, or that they were of sufficient quality to reasonably show that Defendant had reason to fear Victim would kill him. *See State v. Rutter*, 93 S.W.3d 714, 731 (Mo. banc 2002).

■ Furthermore, it was within the trial court's discretion to place limitations on the manner in which Victim's prior acts of violence could be proven. The trial court allowed Defendant to testify that he knew Victim had at times been violent towards Rebecca, and that on one occasion, Victim had wrecked the house, hit Defendant's car with an axe handle, and threatened to kill Defendant, his wife, and his step-son. Therefore, the jury was aware that Victim had threatened Defendant, and previously directed violence towards him. As the Court explained in *Waller*, 816 S.W.2d at 216:

> Also within the trial court's discretion rests the responsibility to place limitations on the extent to which prior violent acts may be proved. While the defendant should be permitted to substantiate his claim of justification because it informs the jury on the state of the defendant's mind at the time of the incident, and thereby enables the jury to decide whether defendant acted rationally under the circumstances, the trial court should not allow the progress of a criminal trial to become unnecessarily slowed by evidentiary conflicts over matters of questionable relevance.

The trial court did not abuse its discretion in limiting the admission of evidence regarding Victim's prior acts of violence. This point is denied.

■ In his second point, Defendant maintains that the trial court erred in re-

---

**5.** Defendant also provided the trial court with transcripts of Rebecca's deposition and pre- liminary hearing testimony as an offer of proof.

fusing to instruct the jury on the lesser-included offense of voluntary manslaughter. Defendant argues that the failure to do so violated his right to due process of law, because there was a basis in the evidence for an acquittal of the higher offense and a conviction of the lesser offense. We reject Defendant's argument, because even if he was entitled to an instruction on voluntary manslaughter, he was not prejudiced by the trial court's failure to do so.

■■■■ A lesser-included offense is one that can be established by proof of the same or less than all the facts required to establish the commission of the offense being charged. *State v. Coker,* 210 S.W.3d 374, 380 (Mo.App. S.D.2006). "[T]rial courts are only required to give an instruction on a lesser[-]included offense if such an instruction is supported by the evidence adduced at trial." *Id.* at 381 (citing Section 556.046). Where there is a basis for acquittal of the charged offense and conviction of the lesser-included offense, then the trial court must instruct the jury on the lesser-included offense. *Id.* at 380. If a reasonable juror could find from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct on the lesser offense. *Id.*

Defendant argues that the trial court erred by refusing to submit Instructions A and B, which offered the jury the alternative of voluntary manslaughter. Defendant's proposed Instruction A instructed the jury that second degree murder required a finding that "[D]efendant *did not* [cause Victim's death] under the influence of sudden passion arising from adequate cause." (emphasis added). Defendant's proposed Instruction B instructed the jury that voluntary manslaughter required a finding that Defendant was not guilty of murder in the second degree, but "[D]efendant knew or was aware that his con-

duct was causing or was practically certain to cause the death of [Victim]." Read in tandem, the two proposed instructions would have provided the jury with the opportunity to find that Defendant acted under the influence of sudden passion in causing Victim's death, and convict Defendant of voluntary manslaughter. The trial court rejected both instructions and instructed the jury on murder in the second degree without reference to sudden passion. Defendant alleges that there was enough evidence presented which would have allowed the jury to have found adequate cause for sudden passion, and supported submission of the modified second degree murder and voluntary manslaughter instructions to the jury.

In *State v. Smith,* 944 S.W.2d 901, 918 (Mo. banc 1997), the defendant appealed his conviction for murder in the first degree, arguing that the trial court erred by not submitting a voluntary manslaughter instruction to the jury. In that case, the jury was presented with instructions as to murder in the first degree and murder in the second degree. *Id.* The Supreme Court of Missouri determined that it did not need to decide whether the defendant was entitled to an instruction on voluntary manslaughter, because he was not prejudiced by its absence. *Id.* The Court explained that, "[t]he second-degree murder instruction gave the jury the opportunity to find that [the defendant's] actions were not deliberate. Instead, the jury found that [the defendant] had coolly reflected upon the matter." *Id.* at 918–19. Therefore, the Court concluded that, "[n]o reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented with a voluntary manslaughter instruction." *Id.* at 919. *See also State v. Glass,* 136 S.W.3d 496, 515 (Mo. banc 2004)(explaining that, "[w]hen a jury is 'presented with instruc-

tions on murder in the first degree and murder in the second degree, [and] had the opportunity to find that [the defendant's] actions were not deliberate' but nonetheless convicts of first degree murder, 'no reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented' with a different lesser included offense instruction.") (quoting *State v. Jones*, 979 S.W.2d 171, 185 (Mo. banc 1998)).

In accord with the holdings of *Smith* and *Glass*, we find that Defendant was not prejudiced by the trial court's failure to give a voluntary manslaughter instruction, because the jury had been given the opportunity to reject the element of deliberation, but instead found Defendant guilty of murder in the first degree. Defendant's second point is denied.

In his third and final point, Defendant argues that the trial court erred in overruling his motion for new trial, because Defendant had recently discovered evidence which called into doubt his guilt for the charged offenses. We disagree.

We review the trial court's decision to deny a motion for new trial based on newly discovered evidence for an abuse of discretion. *State v. Smith*, 181 S.W.3d 634, 638 (Mo.App. E.D.2006). "New trials based on newly discovered evidence are disfavored." *Id.* A new trial is warranted based on newly discovered evidence only where the defendant shows that: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that it was not discovered sooner; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) it is not cumulative only or merely impeaching the credibility of the witness. *Id.See also State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997).

Here, the trial court held a hearing on Defendant's motion for new trial, at which point Defendant presented a memorandum written to defense counsel by his secretary indicating that Rebecca's mother had called during the trial and "advised that on the day of the murder Rebecca told her that [Victim] would be dead by the end of the day." At the hearing, Defendant's counsel argues that, "our position is that if a[sic] physical abuse by [Victim] was so bad that [Rebecca] is wishing him dead or talking about him being dead, that [Victim] is an extremely violent person. And the jury wasn't allowed to hear that." The trial court denied the motion for new trial, finding that the evidence would not have supported a verdict of not guilty and might have substantiated evidence of premeditation.

We cannot say that the trial court abused its discretion in denying Defendant's motion for new trial. First, Defendant does not explain how such evidence could not have been discovered sooner through the exercise of due diligence. There is no indication in the record that Rebecca's mother was not willing to talk at an earlier date, or that she could not be found. We are unable to ascertain from the record, if Defendant even attempted to interview Rebecca's mother. Furthermore, as the trial court observed, evidence that Rebecca may have been complicit in Victim's death does not provide him with a defense, and might be viewed by a jury as evidence of deliberation. Defendant's third point is denied.

The judgment and sentence of the trial court is affirmed.

BATES, C.J., and BARNEY, J., concur.