**STATE of Missouri, Respondent,**

v.

**Ronnie S. BOST, Appellant.**

**No. WD 43146.**

Missouri Court of Appeals,
Western District.

Oct. 1, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Byron N. Fox, P.C., Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Ronnie S. Bost was convicted by a jury in Jackson County, Missouri, of voluntary manslaughter, § 565.023, RSMo 1986, and armed criminal action, § 571.015.1, RSMo 1986. Mr. Bost was subsequently sentenced to consecutive terms of seven years and four years imprisonment. Mr. Bost appeals the convictions contending that (1) the trial court erred in denying his motion for a new trial because one of the twelve jurors was not eligible to serve on a petit jury; and (2) the trial court erred in refusing to allow him to present evidence of the victim's specific acts of violence. The convictions for voluntary manslaughter and armed criminal action are remanded to the trial court with directions.

On May 8, 1989, Ronnie Bost and Michael Flynn were present at Pete's Place, a drinking establishment located in Grain Valley, Missouri. Mr. Bost and Mr. Flynn had been involved in prior disputes with each other. However, both men had been inside Pete's Place for several hours without incident. At some point, Mr. Bost left the bar and, at approximately 11 p.m., returned. Mr. Flynn was still at Pete's Place shooting pool when Mr. Bost returned. Eventually, words were exchanged between the two men. An argument ensued and Mr. Flynn approached Mr. Bost. The defendant pointed a .38 caliber revolver at Mr. Flynn and warned him to "back off." Mr. Flynn continued to move toward Mr. Bost. As Mr. Flynn neared within five or six feet, Mr. Bost fired one shot striking Mr. Flynn in the heart. Mr. Flynn stumbled forward and Mr. Bost fired a second

shot striking him in the head. Mr. Flynn fell to the floor and died as a result of the gunshot wounds.

Ronnie Bost was subsequently charged by indictment with first degree murder and armed criminal action. At trial, Mr. Bost argued that he acted in self-defense, and, as support for this contention, presented evidence of Mr. Flynn's reputation as a violent and assaultive individual. The trial court, however, did not permit Mr. Bost to introduce proffered evidence of several purported specific prior violent acts perpetrated by Mr. Flynn which Mr. Bost claimed to know about when Mr. Flynn was killed. The jury returned a verdict finding Mr. Bost guilty of voluntary manslaughter and armed criminal action. Mr. Bost appeals the convictions.

For point (1), Mr. Bost contends that the trial court erred in denying his motion for new trial because the jury's verdict was not returned by twelve competent jurors. In particular, Mr. Bost contends that one of the jurors, Juror Fenton, was not qualified under Missouri law to participate on a petit jury. Mr. Bost claims that Juror Fenton suffers from a hearing problem which significantly impaired his ability to serve on the jury. At trial, following the jury's return of a guilty verdict, the defendant requested that the court poll the jury. When polling the jury, the court asked Juror Fenton if the conviction represented his verdict. Juror Fenton sat silently and did not respond to the court's inquiry. The court repeated its inquiry by stating, "That's you on the back row, we're asking is that your verdict?" Juror Fenton responded, "I misunderstood you." The court again inquired whether the conviction represented Juror Fenton's verdict. Juror Fenton finally responded affirmatively.

The jury's verdict was returned on December 7, 1989. On December 29, 1989, twenty-two days after the court polled the jury, Mr. Bost filed a motion for new trial. In his motion for new trial, Mr. Bost contended that Juror Fenton's hearing disability deprived him of his sixth amendment right to a fair trial. In his motion, Mr. Bost stated:

In the instant case, it was not known until the post-verdict polling of juror number four, [juror] Fenton, that it became known that he suffered from such a hearing problem that his ability to hear the evidence was affected.... It was clear that he could not hear the proceedings.

The court held a hearing in chambers on Mr. Bost's motion for new trial. At the hearing, the defendant's counsel stated to the court, "As I think I indicated to you before, our position was one that we believed the court had the ability to recognize [Juror Fenton's hearing] problem from the polling process that occurred in this trial." Juror Fenton attended the hearing in chambers and testified that he has a hearing impairment. Juror Fenton further testified that he does not wear a hearing aid and has never been treated by a physician for his hearing problem. Juror Fenton admitted that, due to his hearing disability, he was not able to hear all of the evidence in Mr. Bost's trial, but was able to deliberate with the jury and discuss the evidence with the other jurors. Mr. Fenton stated, "I believe that I heard enough to make an intelligent judgment on it." At the end of the hearing, the court stated, "I thought he heard pretty well. I was surprised at how well he heard." The trial court subsequently denied Mr. Bost's motion for a new trial.

Section 494.425, RSMo Supp.1989, describes which individuals have been determined by the legislature to be ineligible for service on petit or grand juries. The statute provides in pertinent part:

The following persons shall be disqualified from serving as a petit or grand juror:

. . . .

(5) Any person unable to read, speak and understand the English language;

. . . .

(9) Any person who, in the judgment of the court or the board of jury commissioners, is incapable of performing the duties of a juror because of mental or physical illness or infirmity.

*Id.* The language of subsections (5) and (9) of § 494.425 suggests that a substantial

hearing impairment could result in a juror being ineligible to participate on a petit or grand jury.

Section 494.465.1, RSMo Supp.1989, establishes the time in which a party must object to ineligible jurors. This statute provides in part:

A party may move to stay the proceedings or for other appropriate relief ... on the ground of substantial failure to comply with the provisions of sections 494.400 to 494.505. Such motion may be made at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later.

§ 494.465.1. Thus, under the provisions of § 494.465, Mr. Bost's motion objecting to Juror Fenton must have been made within fourteen days after Mr. Bost discovered, or by the exercise of reasonable diligence could have discovered, Juror Fenton's hearing disability.

■ In this case, Mr. Bost's motion for a new trial demonstrates that Juror Fenton's hearing disability was discovered or, by the exercise of reasonable diligence, could have been discovered on December 7, 1989, the date that the court polled the jury. As Mr. Bost stated in his motion for new trial, following the court's difficulty in polling Juror Fenton, "[i]t was clear that he could not hear the proceedings." The defendant's counsel reiterated this point at the hearing held in chambers. Therefore, Mr. Bost had fourteen days from December 7, 1989, to move for "appropriate relief" on the grounds of Juror Fenton's hearing disability. Mr. Bost's motion for a new trial was filed twenty-two days after the jury was polled and, therefore, was not filed in a timely manner as required by § 494.465.

Section 494.465 further provides that "[t]he procedures prescribed by this section are the exclusive means by which a party in a case may challenge a jury on the grounds that the jury was not selected in conformity to sections 494.400 to 494.505." § 494.465.3. This statute reflects a general reluctance to set aside jury verdicts when it later appears that one juror did not possess all of the technical qualifications. *See Eastman Kodak Stores, Inc. v. Summers,* 377 S.W.2d 476, 482 (Mo.App.1964). Missouri courts have expressed concern that jury verdicts not be "ambushed and overthrown—sometimes wilfully and by lying in wait ..." by nonending litigation challenging jurors' qualifications. *Id.* Therefore, § 494.465 represents the policy in Missouri that *all* challenges to a juror's qualifications must be presented to the trial court "before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefore, whichever occurs later." § 494.465.1. Mr. Bost's objections to Juror Fenton's qualifications were not raised in accordance with the exclusive means provided by the legislature. Point (1) is denied.

Mr. Bost asserted the defense of self-defense. He claims his conduct was precipitated by apprehension for his own safety, having had knowledge of the victim's violent propensities. For point (2), Mr. Bost contends that the trial court denied him a fair trial by preventing him from introducing evidence of Mr. Flynn's specific prior acts of violence to demonstrate the victim's violent and assaultive character. At trial, Mr. Bost was permitted to introduce evidence establishing Mr. Flynn's reputation in the community for violence. Additionally, the trial court properly allowed Mr. Bost to testify regarding a prior incident during which Mr. Flynn struck Mr. Bost, breaking Mr. Bost's nose, cutting his lip and bruising his face. *See State v. Hefeli,* 715 S.W.2d 524, 530 (Mo.App.1986). However, Mr. Bost also sought to introduce evidence of other specific acts of violence involving Mr. Flynn but having no connection with the defendant. The trial court denied Mr. Bost's request to introduce this evidence. Mr. Bost made an offer of proof during which he recounted several incidents which involved violent conduct by Mike Flynn but which preceded and were unrelated to the death of Mike Flynn on May 8, 1989.

Until recently, the applicable rule of law prohibited admission of evidence of the victim's prior acts of violence known to the defendant at the time of the incident, which resulted in the defendant being charged, to support defendant's defense that his conduct was justified by reasonable apprehension of bodily harm. *See State v. Buckles,* 636 S.W.2d 914, 922 (Mo. banc 1982); *State v. Maggitt,* 517 S.W.2d 105, 107 (Mo. banc 1974); *State v. Duncan,* 467 S.W.2d 866, 867–68 (Mo.1971). However, in *State v. Waller,* 816 S.W.2d 212 (Mo. banc 1991), the supreme court abrogated this rule. The court stated:

> Where justification is an issue in a criminal case, the trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged.

*Id.* at 216. The supreme court cautions trial courts and "vests new discretion" in trial courts when the new rule is applied. *Id.* Before evidence of prior specific acts of violence by a victim can be admitted, the defendant must lay a proper foundation. *Id.* "Other competent evidence must have raised the question of self-defense." *Id.* The defendant must show he was aware of the specific act or acts of violence when he committed the act for which he is charged, and the incidents must not be too remote in time and must be of such quality as to be capable of contributing to the defendant's fear of the victim. *Id.* at 216. "Where acts are too remote in time or of a quality substantially different from the act that the defendant accuses the victim of committing, the trial court may decline to admit the proof into evidence." *Id.* at 216, citing *People v. Miller,* 39 N.Y.2d 543, 349 N.E.2d 841, 848, 384 N.Y.S.2d 741 (1976).

Mr. Bost testified in his offer of proof to several specific incidents of violent acts purportedly committed by the victim. Mr. Bost stated he observed some of the incidents, he was informed by the victim of others, and he was informed of another incident by a third person. These incidents occurred, according to Mr. Bost's testimony, prior to May 8, 1989, and he was aware of each incident when the fatal encounter occurred on that date. Additional facts are necessary to determine if the evidence proffered by Mr. Bost is admissible under the rule and guidance expressed in *Waller.* Therefore, this case is remanded with direction that the trial court conduct a hearing to permit Mr. Bost to proffer additional evidence satisfying the requirements expressed in *Waller* for the introduction of evidence of prior specific acts of violence demonstrated by the victim in support of Mr. Bost's defense. The trial court, applying the direction expressed in *Waller* and the other rules of evidence, will determine whether the proffered evidence is admissible. If the court concludes that the proffered proof, or a portion thereof, is admissible, the court will set aside the judgment of conviction and order a new trial. If the court finds that Mr. Bost has failed to satisfy the necessary requirements for introducing the proffered evidence, the court will so find and enter an order denying Mr. Bost's proffer, and Mr. Bost will be permitted to appeal the court's decision as a final judgment.

All concur.