STATE of Missouri, Plaintiff–
Respondent,

v.

Jacob WALD, Defendant–Appellant.

Jacob WALD, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18066, 18543.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 14, 1993.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant guilty of arson in the first degree, § 569.040,[1] and he was sentenced, as a prior and persistent offender, to 30 years' imprisonment. Defendant appeals, and that appeal is Case No. 18066. After the jury trial, defendant filed a motion under Rule 29.15, seeking post-conviction relief. The motion was denied after an evidentiary hearing. Defendant's appeal from that denial is Case No. 18543. The appeals have been consolidated and will be dealt with separately in this opinion.

### Case No. 18066

Defendant contends that the trial court committed error: (1) in receiving the testimony of witnesses Larry Harsh and Mary Goade to the effect that the fire "would have been such as to cause serious physical injury or death"; (2) in rejecting defendant's offer of proof as to evidence of a fire of a similar nature which occurred on May 1, 1991, at a house located at 603 Persimmon and occupied by Mary Goade; (3) in giving Instruction 9, MAI–CR.3d 312.10, the so-called "hammer" instruction; and (4) in giving Instruction 4, MAI–CR.3d 302.04, which defined "reasonable doubt."

Defendant does not challenge the sufficiency of the evidence to support the verdict. In addition to its formal portions, the information charged that defendant, on August 10, 1991, "knowingly damaged an inhabitable structure consisting of a house located at 627 High Street, Joplin, Jasper County, Missouri, and defendant did so by starting a fire at a time when persons were then present, and thereby recklessly placed such persons in danger of death or serious physical injury."

The state's evidence showed that on August 10, 1991, between 3:00 and 3:30 a.m., defendant was in the vicinity of Mary Goade's house located at 627 High Street, Joplin. In the house at that time were Mary Goade, her 13–year–old son Michael, and Tommy Theus.

State's witness Atchie Derrick, who lived nearby, testified that shortly before the fire he saw defendant get out of a vehicle which stopped near the Goade house. The driver drove off. A few minutes later, the witness saw defendant walk down the alley to the home of Mary Goade. Defendant was carrying something. Defendant walked through a gate into Mary Goade's back yard and walked around the house, "like he had it all mapped out." The witness heard glass break and heard defendant say, "I told you, you bitch, I'd get even with you." That remark was followed immediately by three explosions. The witness was acquainted with defendant and positively identified him.

Mary Goade testified that her son Michael woke her and said, "Mom, I smell smoke." Mary walked to the kitchen to see if any appliances had shorted out and saw a fire at the end of her daughter's bed. The occupants of the house escaped.

Mary Goade testified that she knew defendant. She said, "There was a time when he and I were seeing each other on a regular basis. We had a falling out. There was some bickering going on after we split the sheets."

During the prosecutor's examination of Mary Goade, the following occurred:

> Q. Now, with regard to this fire, and again this is a pretty silly question, would this fire, had it gone unchecked, would that have caused you and your son and Mr.

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Theus, would that have caused you serious physical injury or death?

A. Yes, it would.

Joplin policeman Larry Harsh testified that he was on duty in the area and smelled smoke. He saw Mary Goade and her son Michael emerging from the house at 627 High Street. He saw them "fall on the front porch or just off the front porch," and about the same time "the house flashed." He notified the dispatcher of the house fire because "the house was flashing and flames were coming off the porch area.... I decided I was going to take my gun belt off and crawl up to the house and get the people off the front porch because the flames were so heavy. As I approached the house, flames were being sucked back into the house. I moved them from the porch area to a tree about 30 feet from the porch."

When the prosecutor asked, "If you had not moved them, would they have been burned," Harsh responded, "Oh, yes, without a doubt." He also said that this was not "a small fire by any means.... This whole house—when they opened the door, the whole house flashed, the whole house burned, just—completely."

A fire investigator testified that the fire was intentionally set and that in the center of the bedroom where the fire originated there was evidence of a "flammable liquid pour."

Defendant's first point is that the trial court committed plain error in receiving into evidence the testimony of witnesses Larry Harsh and Mary Goade, quoted above, to the effect that the fire "would have been such as to cause serious physical injury or death." Defendant contends that the testimony was "conclusory and invaded the province of the jury."

Defendant concedes that this claim of error was not asserted in the trial court and has not been preserved for appellate review. Defendant requests review pursuant to Rule 30.20, which reads, in pertinent part: "... plain errors affecting substantial rights may be considered in the discretion of the [appellate] court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Defendant relies on *State v. Clements*, 789 S.W.2d 101 (Mo.App.1990), in which this court held that the trial court erred in admitting testimony of a psychiatrist that the defendant, on trial for murder in the first degree, deliberated prior to killing the victim. The court said that although the psychiatrist was an expert with regard to defendant's mental condition, he was not an expert on the issue of whether, at the time of the homicide, defendant deliberated, and that the determination of that issue was within the capability of lay jurors under appropriate instructions. Unlike *Clements*, this case does not involve the admissibility of the opinion of an expert on a subject within the province of laymen.

In *State v. Hill*, 812 S.W.2d 204 (Mo.App. 1991), defendant was convicted of driving while intoxicated. On appeal, the defendant claimed that the trial court erred in receiving evidence from the arresting officer that defendant "was combative and resistant." The court held that the evidence was admissible even if it was opinion evidence given by a lay person. At p. 208 the court said:

Where a witness has personally observed events he is permitted to testify as to his matter of fact comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life.

This case involved a house occupied by three people when it was set afire. According to Harsh, the house burned completely. Even without the challenged portions of the testimony of Mary Goade and Larry Harsh, the state's evidence supported a finding that the fire placed the occupants of the house in danger of death or serious physical injury. The challenged portions were merely cumulative and self-evident. They accord with the ordinary experiences of everyday life. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in rejecting his offer of proof, which he made immediately prior to the trial and in connection with the state's motion in limine, which sought to exclude the evidence

contained in the offer. The offer of proof consisted of the following: On May 4, 1991, Mary Goade was living in a house at 603 Persimmon in Joplin; a fire occurred which was intentionally set; there was a burn pattern underneath the bed, indicating that a flammable liquid had been poured under the bed and set afire; Mary Goade "pointed to Mr. Wald as the cause of that fire"; Dolores Andrews would testify that she was with Mr. Wald at another location at the time of the fire and that he had been with her all night.

When the offer of proof was made, defense counsel said to the trial court: "We are trying to prove a prior bad act committed by someone else that would prove that someone else committed this one. It would not prove it, but it would be evidence that the inference was that the same person that committed that one was the one that committed this one."

■ As the excellent brief of the state points out, this point has not been preserved for appellate review. A ruling in limine is interlocutory only and is subject to change during the course of the trial. *State v. Purlee*, 839 S.W.2d 584 (Mo. banc 1992). The motion in limine, in and of itself, preserves nothing for appeal. The proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof. *Id.* Here defendant made no attempt to present the excluded evidence at trial. In any event, there is no error, plain or otherwise, because the excluded evidence was inadmissible.

In *State v. Umfrees*, 433 S.W.2d 284 (Mo. banc 1968), the court said, at 287–288:

Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime.... The evidence, to be admissible, must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Disconnected and remote acts, outside the crime itself cannot be separately proved for such pur-

pose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.

In *State v. Easley*, 662 S.W.2d 248 (Mo. banc 1983), defendant was on trial for arson, arising out of a 1978 fire set to a building. The trial court rejected defendant's offer to prove that one Melching, a prior owner of the building, may have been involved in a 1976 fire in the same building. Defendant offered no evidence connecting Melching with the 1978 fire. The supreme court, approving the trial court's ruling, said that defendant was not entitled to present evidence that Melching had a motive in the absence of evidence directly linking him with the 1978 fire.

Defendant's offer in the instant case was even weaker, since it did not purport to identify defendant's suspect in the May fire or the August fire. The following authorities also support the trial court's ruling: *State v. LaRette*, 648 S.W.2d 96 (Mo. banc 1983); *State v. Bolanos*, 743 S.W.2d 442 (Mo.App. 1987); *State v. Allen*, 684 S.W.2d 417 (Mo. App.1984). Defendant's second point has no merit.

■ Defendant's third point is that the trial court "plainly erred and abused its discretion in giving Instruction No. 9, MAI–CR.3d 312.10," because the instruction coerced the jury into finding defendant guilty "in that although previously deadlocked at 7-to-5, only little more than an hour from the trial court's giving Instruction No. 9, the jury returned a verdict of guilty."

The jury began deliberations at 4:22 p.m. It transmitted a question to the court at 4:35 p.m. and a request at 5:54 p.m., and another request at 6:16 p.m. At 6:44 p.m. the jury sent in to the court a note which read: "7 G, 5 NG." The note prompted a conference in chambers among counsel and the court.

The following then occurred:

THE COURT: We have now prepared Instruction No. 9. [Defense counsel], I would like to give both you and the attorney for the state an opportunity, should you choose to do so before the jury is

brought back in, to make any statements you wish about the giving of the instruction.

[Defense Counsel]: Judge, on behalf of the defendant, I would go ahead and request that the instruction be given.

In *State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979), defendant asserted the trial court erred in giving Instruction 8. Citing § 545.-030.1(16), the court held that the instruction was requested by defendant, and thus his challenge had no merit. Other cases holding that a defendant may not complain of the giving of an instruction which he requested include: *State v. Leisure*, 796 S.W.2d 875, 878–879 (Mo. banc 1990); *State v. McMillin*, 783 S.W.2d 82, 97[30] (Mo. banc 1990); *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982).

In *Leisure*, the court said, at 878:

> ... § 545.030.1, RSMo 1986, has been the law in this state for more than one hundred years. It provides, in part, that no criminal "trial, *judgment* or other proceedings *be ... in any manner affected*."
>
> . . . . .
>
> (16) *For any error committed at the instance* or *in favor of the defendant;*
>
> . . . . .
>
> If the trial court erred in giving the manslaughter instruction, it was error committed at the instance of defendant, and most certainly he considered it in his "favor." Hence, it should not "in any manner" affect his conviction. Section 545.-030.1(16). (Emphasis in original.)

This court holds that defendant may not challenge the giving of Instruction 9 because it was given at his request. Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred in giving Instruction No. 4, based on MAI–CR.3d 302.04, in that the instruction erroneously defined "reasonable doubt." In *State v. Blankenship*, 830 S.W.2d 1, 13[14] (Mo. banc 1992), the court rejected the same contention and said that the instruction has been repeatedly upheld. Defendant's fourth point has no merit.

The judgment is affirmed.

Case No. 18543

 Movant asserts that he was entitled to relief on his Rule 29.15 motion, and the trial court erred in ruling otherwise, because movant was denied effective assistant of counsel in that trial counsel: (a) failed to object to the trial court's giving Instruction No. 9, the hammer instruction, to the jury and the instruction coerced the jury into finding defendant guilty, and (b) failed to make and preserve an objection to the prosecutor asking witnesses Larry Harsh and Mary Goade if the fire would have been such as to cause serious physical injury or death.

Appellate review of the trial court's ruling on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). To prevail on a claim of ineffective assistance of counsel, movant must demonstrate that his trial counsel failed to show the customary skill and diligence that a reasonably competent attorney would provide and that he was prejudiced due to the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Kennedy v. State*, 771 S.W.2d 852, 857 (Mo.App.1989). To demonstrate prejudice, the movant must show that the attorney error changed the outcome of his trial. *Kennedy*, at 857. The movant must also overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Kennedy, supra*, at 857. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

At the evidentiary hearing on the Rule 29.15 motion, movant called the attorney who represented movant at the trial. He mentioned the note which the jury sent to the court at 6:44 p.m. after it began deliberations. See the discussion of defendant's third point in Case No. 18066, *supra*.

The attorney testified that he construed the note to mean that the jury was "hung up, 7 for conviction, 5 for acquittal." He said he requested that the court give Instruction 9,

and that he did not remember whether he discussed the matter with movant before making that request and that he probably did not.

On cross-examination, the attorney testified that the hammer instruction is "fairly favorably written for the defense." Explaining his decision for requesting the instruction, the attorney said:

The reasoning behind it was I didn't feel that the state's witness came off very good. Derrick, Atchie Derrick was the guy's name. I thought I made some pretty good points on cross-examination. I was afraid that if we hung up and had to try it again that he would be much better the second time. Basically, if it had be (sic) a 6–6 or a 7–5 for acquittal, the decision would have been easy, but 5–7 for acquittal, 7–5 for conviction was a tough decision, but basically I was just concerned with giving Atchie Derrick another chance at trial.

In its order denying the Rule 29.15 motion, the trial court said:

During testimony [defense counsel] revealed he had approximately 4½ years of experience defending criminal cases. Out of 35 jury trials only 3 or 4 of his cases involved the hammer instruction, however [defense counsel] testified that he felt the instruction was favorable to the defendant in this matter. [Defense counsel] further expressed the belief that during the trial the State's witness was weak and the testimony of that witness would improve if the case was tried the second time. The journal of the trial shows that the jury went back to deliberate an hour and nineteen minutes following the final instruction by the court. Whether or not the court would have granted a mistrial upon request of defense counsel is a point for sheer speculation as is the suggestion that the outcome of the matter would have been different but for [defense counsel's] actions.

The foregoing findings and conclusions of the trial court are not clearly erroneous and, indeed, are fully supported by the record. The essence of movant's brief is that his present counsel would have tried the case differently. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland, supra,* 466 U.S. at 690, 104 S.Ct. at 2066.

Prong (a) has no merit.

In disposing of movant's first point in Case No. 18066, the companion appeal, this court, on plain error review, held that the trial court did not commit plain error in receiving into evidence the testimony of witnesses Harsh and Goade to the effect that the fire had placed the occupants of the house in danger of death or serious physical injury and that the challenged testimony was merely cumulative and self-evident. The challenged testimony was admissible, even if it had been challenged by timely objection. No prejudice could arise from counsel's failure to make an invalid objection. The challenged testimony was merely an obvious conclusion to be drawn from the state's other evidence which described the fire and the location of the occupants of the house.

The motion court found that defendant had not been denied effective assistance of counsel. The motion court did not clearly err in concluding that movant had failed to demonstrate prejudice and had failed to show that any error on the part of the attorney changed the outcome of his trial. Indeed, that conclusion is fully supported by the record. Prong (b) has no merit.

The judgment is affirmed.

CROW and GARRISON, JJ., concur.