STATE of Missouri, Plaintiff–
Respondent,

v.

William LAWSON, Defendant–Appellant.

William LAWSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16533, 18486.

Missouri Court of Appeals,
Southern District,
Division Two.

April 15, 1994.

Motion for Rehearing or Transfer
Denied May 3, 1994.

Application to Transfer Denied
June 21, 1994.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kearney, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for plaintiff-respondent, respondent.

GARRISON, Judge.

William Lawson (Defendant) was convicted by a jury of first degree murder, § 565.-020.1,[1] and was sentenced to life imprisonment without the possibility of probation or parole.

Defendant filed a pro se motion under Rule 29.15, alleging ineffective assistance of his trial counsel.[2] An amended motion was later filed by counsel but was denied after an evidentiary hearing. Defendant's direct appeal from his conviction (Case No. 16533) and his appeal from denial of the Rule 29.15

motion (Case No. 18486) have been consolidated.

Defendant raises multiple points of alleged trial court error which may be summarized as follows: (1) the State was permitted to make improper statements in closing arguments; (2) the court should have, *sua sponte,* corrected a jury instruction submitted by Defendant; (3) the State's motion in limine was improperly sustained; (4) Defendant's challenge of a venireperson for cause was improperly overruled; (5) the jury panel from which the parties made peremptory strikes consisted of an insufficient number of venirepersons; and (6) the court should not have overruled Defendant's motion to dismiss because he was charged by information instead of indictment. He also claims error in the denial of his Rule 29.15 motion.

*FACTS*

This case arose from the shooting death of John Thompson (Thompson) on March 3, 1988. Thompson, who had been staying with Aletta Lam (Lam), went drinking with his friend, Matt Falkner (Falkner). When they returned to the Lam residence, Defendant's brother, Dwight Lawson (Dwight), was there but later left. Dwight returned a few minutes later saying he needed help because his car was stuck in the mud but Thompson and Falkner refused to help. Dwight started to telephone the Defendant, but a fight broke out between him and Thompson which was later joined by Falkner. There was a factual dispute about subsequent events, including the shooting.

According to Dwight, he got to the phone during a lull in the fight and called Defendant, asking for help. He said that Falkner again attacked him while he was using the phone and that the ensuing fight continued until he heard the shots fired by Defendant.

Defendant testified that he heard a fight break out while he was talking to Dwight on the phone and later Dwight got back on the phone and asked for help. He said that he also heard Lam talking about a knife. De-

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S., unless otherwise noted.

2. Present counsel for Defendant did not represent him at the trial of this cause.

fendant drove to the Lam residence and, according to him, when he arrived he saw a fight in progress; he got his .357 magnum from the car; and shot both Thompson and Falkner as they started toward him when he entered the house.

Falkner testified that when Defendant arrived at the Lam residence he was met outside by Dwight. A few minutes later, Defendant and Dwight entered the residence with Dwight going through the door first. According to Falkner, Dwight struck him from the rear, and simultaneously Defendant entered and shot first Thompson and then Falkner in the face. Thompson died by aspirating blood resulting from the gunshot wound.

## CASE NO. 16533

### I

In his first point, Defendant contends that the trial court permitted the State to make improper closing arguments. Summarized, there are allegations that the State: degraded defense counsel by accusing them of slandering the victim, concealing evidence about the victim's family, and conspiring to present false evidence; improperly described the law regarding self-defense and defense of others; improperly injected an argument about punishment in the guilt phase of the trial and appealed to the jurors' sympathies; improperly described the element of deliberation and misstated the evidence concerning that element; and that counsel implied that he had special knowledge about the facts of the case.

■ Defendant complains that the trial court erred by not sustaining objections to the State's final closing argument and by not *sua sponte* preventing the prosecutor from making the improper arguments. Defendant did not, however, object to any of the arguments referred to in his point relied on. Accordingly, they are not preserved for appellate review. *State v. Childers*, 801 S.W.2d 442, 444 (Mo.App.1990). Any review we might undertake is limited to plain error to determine whether the closing argument resulted in a manifest injustice or a miscarriage of justice. Rule 30.20; *State v. Watson*, 839 S.W.2d 611, 617 (Mo.App.1992).

■ Plain error relief as to closing arguments should be rarely granted and is generally denied without explication. *State v. Elliott*, 856 S.W.2d 944, 945 (Mo.App.1993). This is because substantial latitude is allowed in closing argument and, in the absence of a specific request for relief, any trial court action would be uninvited interference which itself might constitute error. *State v. Watson*, 839 S.W.2d at 617. *See also State v. Jordan*, 834 S.W.2d 900, 901 (Mo.App.1992), and *State v. Childers*, 801 S.W.2d at 445. To be entitled to relief under the plain error rule, Defendant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting substantial rights, and even if the argument is improper, a conviction will be reversed only if it is established that it had a decisive effect on the jury's determination. *State v. Parker*, 856 S.W.2d 331, 332–333 (Mo. banc 1993). The burden is on the defendant to demonstrate the decisive significance of the argument. *Id.* at 333; *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983).

■ We have reviewed the argument about which Defendant complains and agree that some of it might have been the proper subject of an objection which would have permitted the trial court to take corrective action at the time. We are, however, unable to conclude that it was of decisive significance so as to result in a manifest injustice or a miscarriage of justice. Accordingly, we find no plain error requiring a reversal.

■ Defendant also includes the following at the conclusion of his first point relied on: "In the alternative, trial counsel was ineffective in not objecting and/or requesting some form of relief and for not preserving such error in a motion for new trial." This is the only portion of Point I which refers to ineffective assistance of counsel. This alternative contention fails to comply with Rule 30.06(d) by not stating "wherein and why" the court is alleged to have erred. Notwithstanding this fact, having failed to convince us in the direct appeal that the argument complained of influenced the verdict, a claim of ineffectiveness of counsel based on the same allegations should be denied. *State v.*

*Parker,* 856 S.W.2d at 333. In addition, if this portion of the point is directed to ineffectiveness of counsel in the context of a Rule 29.15 motion, issues raised and decided on direct appeal cannot be relitigated on a theory of ineffective assistance of counsel. *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc 1990). Finally, the reference to ineffectiveness of counsel contained in the point relied on is not carried forward into the argument section of the brief. Failure to do so constitutes an abandonment of that contention. *Newberry v. State,* 812 S.W.2d 210, 211 (Mo. App.1991).

Defendant's first point is denied.

## II

In his second point, Defendant alleges that the trial court erred in not *sua sponte* discovering and correcting three alleged defects in Instruction No. 10.[3] That instruction was patterned after MAI–CR 3d 306.08 (1987) entitled "Justification: Use of Force in Defense of Third Persons," and was submitted by Defendant.

First, Defendant contends that the burden of proof paragraph is contradictory because the first sentence uses the phrase "did not act" but the second sentence does not.[4] Next, Defendant contends that the second paragraph is improper in that it required the jury to find that, under the circumstances as

Defendant reasonably believed them to be, Dwight was not the initial aggressor.[5] Finally, Defendant contends that the use of the name "Dwight Lawson" at the end of the last paragraph is error and, instead, the name John Riley Thompson should have been inserted.

■ Defendant, however, submitted Instruction No. 10. Having done so, he has no cause for complaint. *State v. McMillin,* 783 S.W.2d 82, 97 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); *State v. McIlvoy,* 629 S.W.2d 333, 339 (Mo. banc 1982).

■ In the alternative, Defendant also suggests that the instruction constituted plain error. The first two paragraphs of the instruction about which Defendant complains, however, were patterned after MAI–CR 3d 306.08. An instruction in the format of MAI–CR will not be deemed error. *State v. Newlon,* 627 S.W.2d 606, 614 (Mo. banc), *cert. denied* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); *State v. Hawkins,* 703 S.W.2d 67, 70 (Mo.App.1985).

■ It is, however, obvious that the name "Dwight Lawson" was improperly inserted in the last paragraph of the quoted portion of the instruction. The Notes on Use provide that the "name of victim" should be inserted

---

3. Defendant's three complaints about Instruction No. 10 relate to the underlined portions of the following paragraphs:

....

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of Dwight Lawson. *If you have a reasonable doubt as to whether the defendant acted in lawful defense* of Dwight Lawson in using force against John Riley Thompson, you must find the defendant not guilty.

If, under the circumstances as the defendant reasonably believed them to be, *Dwight Lawson was not the initial aggressor in the encounter with John Riley Thompson,*

*And* if the defendant reasonably believed Dwight Lawson was in imminent danger of death or serious physical injury from the unlawful acts of John Riley Thompson and he reasonably believed that the use of deadly force was necessary to defend Dwight Lawson,

then he acted in lawful defense of another person and he must be found not guilty.

....

Evidence that John Riley Thompson had a reputation for being violent and turbulent, and that the defendant was aware of that reputation has been introduced. You may consider this evidence in determining whether the defendant reasonably believed he was in imminent danger of harm from *Dwight Lawson.*

4. In this regard, Defendant points out that the second sentence of that paragraph has since been revised in MAI–CR 3d to read: "Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of another person, you must find the defendant not guilty."

5. As Defendant explains his argument, he contends that being the initial aggressor does not bar this defense; the aggressor must also have an unlawful purpose; in some situations a defender cannot determine who was the initial aggressor; and even if a person is the unlawful initial aggressor he may be guilty of manslaughter rather than murder if he uses deadly force because the other person used more force than reasonably necessary in countering the attack.

both in the opening sentence of that paragraph as well as the last. The State, however, points out that the trial court also submitted Instruction No. 11 which was a self-defense instruction, reading:

> Evidence that John Riley Thompson had a reputation for being violent and turbulent, and that the defendant was aware of that reputation has been introduced. You may consider this evidence in determining whether the defendant reasonably believed he was in imminent danger of harm from John Riley Thompson.

It is apparent from reading Instruction No. 10, and particularly in comparing it to Instruction No. 11, that the use of the name "Dwight Lawson" was an error and that John Riley Thompson was the person actually referred to.

■ An instruction which violates the Notes on Use constitutes error, the prejudicial effect of which is to be judicially determined. Rule 28.02(f); *State v. Oliver*, 720 S.W.2d 45, 46 (Mo.App.1986). In determining whether there was prejudice from a deviation from the Notes on Use, it is proper to consider the party's failure to object or bring the matter to the attention of the trial court. *State v. Livingston*, 801 S.W.2d 344, 349 (Mo. banc 1990). We do not find that the trial court erred in *sua sponte* failing to correct Instruction No. 10 or that its failure to do so constituted plain error.

Defendant also contends, in the alternative to this point, that "trial counsel was ineffective in not discovering these defects." Like the alternative contention in the first point, this portion of the point is insufficient because it violates Rule 30.06(d); Defendant does not carry it forward into the argument section, resulting in abandonment, *Newberry v. State*, 812 S.W.2d at 211; and issues raised and decided on direct appeal cannot be relitigated on a theory of ineffectiveness of counsel. *Clemmons v. State*, 785 S.W.2d at 530. Like *Clemmons*, Defendant requested this instruction and cannot now attack it as "invalid" and "prejudicial." *Id.* Finally, this

contention was not included in Defendant's Rule 29.15 motion.

Defendant's second point is denied.

### III

■ In his third point, Defendant alleges that the trial court erred as a matter of law "when it sustained the State's Motion In Limine in which the State requested the exclusion of any evidence of specific acts of violence by John Thompson against persons other than Defendant." He argues that the jury was instructed on self-defense and defense of others and therefore specific acts of violence of which he had knowledge were relevant concerning the reasonableness of his apprehension of serious bodily harm to himself and his brother. He says that such evidence "could have affected the jury's consideration of the apprehension factor."

In support of its pretrial motion in limine, the State relied on *State v. Davis*, 504 S.W.2d 221 (Mo.App.1973). At the time of this trial, *Davis* stood for the proposition that when justification was in issue a defendant could show reasonable apprehension by showing general reputation of the victim for violence but not specific prior violent acts against persons other than the defendant. Prior to trial, the court indicated it would allow counsel to refer to the "general reputation for violence and turbulence" in opening "as long as you do not mention a specific act."[6] Presumably, this was in reference to the motion in limine but the record is not clear.

Defendant argues that after this trial the Missouri Supreme Court decided *State v. Waller*, 816 S.W.2d 212 (Mo. banc 1991), in which the court reversed the previous prohibition against showing specific acts of violence by a victim when justification is in issue. The court said that in such cases:

> [T]he trial court may permit a defendant to introduce evidence of the victim's prior specific acts of violence of which the defendant had knowledge, provided that the acts sought to be established are reasonably related to the crime with which the defendant is charged.

---

6. Defendant did present evidence of Thompson's reputation for fighting and starting trouble.

To the extent that this Court has changed the rule, it vests new discretion in the trial court. In application of the new rule, courts must exercise caution. The defendant must lay a proper foundation before the evidence can be admitted. Other competent evidence must have raised the question of self-defense. The defendant must show that he was aware of the specific act or acts of violence. The incidents must not be too remote in time and must be of quality such as to be capable of contributing to the defendant's fear of the victim. [Citations omitted.]

*Id.* at 216.

In his point relied on, Defendant complains only that the trial court sustained the State's motion in limine. As said in *State v. Purlee,* 839 S.W.2d 584 (Mo. banc 1992):

A ruling in limine is interlocutory only and is subject to change during the course of the trial. The motion in limine, in and of itself, preserves nothing for appeal. [Citations omitted.]

*Id.* at 592. *See also State v. Wald,* 861 S.W.2d 791, 794 (Mo.App.1993).

Defendant made no offers of proof during trial concerning evidence of prior specific violent acts by Thompson which were known to him. A proponent of evidence must attempt to present the evidence at trial and, if an objection is sustained, an offer of proof must be made. *State v. Purlee,* 839 S.W.2d at 592.

In *Waller,* the defendant had made an offer of proof. Offers of proof were made or specific evidence was presented and rejected in *State v. Harden,* 823 S.W.2d 87 (Mo.App. 1991), and *State v. Bost,* 820 S.W.2d 516 (Mo.App.1991), both of which were remanded on the strength of *Waller.* We believe this distinguishes those cases from the instant case.

For the reasons stated, Point III is denied.

## IV

■ In his next point, Defendant contends that the trial court erred in overruling his request to strike a venireperson for cause. That person did not serve on the jury, however, because she was removed as the result of a peremptory strike.

Following this trial, § 494.480 was amended to include the following:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

The State argues that because of this statute Defendant is entitled to no appellate relief.

Defendant argues that this section would constitute an *ex post facto* law if retroactively applied in the instant case. It has been held, however, that § 494.480 is procedural in nature and its retroactive application does not constitute an *ex post facto* violation. *State v. Wings,* 867 S.W.2d 607, 609 (Mo.App.1993). *See also State v. Boyd,* 871 S.W.2d 23 (E.D.Mo.1993), and *State v. Simmons,* 865 S.W.2d 893, 894 (Mo.App.1993). This point is, therefore, denied.

## V

■ Defendant next contends that the trial court erred in overruling his objection to the method of selecting the jurors and alternate. Because the offense charged was one punishable by death, § 494.480.2(1) provided for a panel of thirty qualified jurors from which each side was entitled to make nine peremptory strikes. In the instant case, after the trial court ruled on all challenges for cause, there were thirty-one venirepersons remaining. The trial court then decided that an alternate juror should be selected. Pursuant to § 494.485, the State and Defendant were each entitled to one peremptory strike with reference to the alternate.

At the trial court's suggestion, the State agreed to give up one of its peremptory strikes as to the regular panel and also a strike as to the alternates. The result was that two of the venirepersons composed the panel for the alternate while the regular panel consisted of twenty-nine persons rather than thirty. After the State made its

eight peremptory strikes, the panel submitted to Defendant for his strikes consisted of twenty-one in addition to two for the alternate.[7] Defendant argues, however, that he was entitled to a full panel of thirty qualified jurors in addition to a panel for the alternate before any peremptory strikes were made.

■ The State argues that Defendant failed to object to this method of jury selection and has therefore failed to preserve the issue for appellate review. Defendant admits that no objection to the procedure appears in the trial transcript but argues that there was an objection which occurred off the record. An objection not appearing on the record, however, is not sufficient to support relief on appeal. *State v. Overby*, 432 S.W.2d 277, 279 (Mo.1968).

■ Defendant points out that trial counsel did object to the jury selection procedure in his motion for new trial. A defendant, however, cannot resurrect an abandoned issue in his motion for new trial after having waived it by failing to make a proper objection. *State v. Overstreet*, 694 S.W.2d 491, 494 (Mo.App.1985).

Under circumstances similar to the instant case, it has been held that the issue was not preserved for appeal. *State v. Cobb*, 820 S.W.2d 704, 707 (Mo.App.1991). The *Cobb* case also held that there was no manifest injustice or miscarriage of justice warranting relief under the plain error rule since the defendant had the same number of peremptory strikes available to him as he would have had if the panel had consisted of sufficient jurors for the State to exercise all of its peremptory strikes. The same is true here.

This point is denied.

## VI

■ In the last point on his direct appeal, Defendant contends that the trial court erred in not sustaining his motion to dismiss because he was charged by information instead of indictment. He argues that the Fifth and Fourteenth Amendments to the United States Constitution require that prosecution in capital cases shall be based upon an indictment. In *State v. Debler*, 856 S.W.2d 641, 655 (Mo. banc 1993), however, our Supreme Court held that under the Missouri Constitution, Art. I, § 17, a defendant can be charged by indictment or information and that the Fifth Amendment requirement of an indictment under the United States Constitution applies only to federal crimes. This point is, therefore, denied.

## CASE NO. 18486

■ Defendant (Movant) appeals from the denial of his Rule 29.15 motion. He alleges that he was denied effective assistance of counsel because his attorney failed to "investigate, discover, and/or properly request suppression of several statements of defendant, relating to the shooting, elicited during the custodial interrogation by Trooper [Sergeant] Loring." [8]

■ An appellate court's review of the motion court's denial of postconviction relief is limited to a determination of whether the findings and conclusions are clearly erroneous. Rule 29.15(j); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Findings are clearly erroneous only if, after a review of the entire record, an appellate court is left with the definite and firm impression that a mistake has been made. *Id.*

■ In order to prevail on a claim of ineffective assistance of counsel, a movant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

---

7. This is the same number of venirepersons which would have remained if the State had exercised all of its strikes from a panel consisting of thirty plus three for the alternate panel.

8. A court's ruling on a motion to suppress does not necessarily finally resolve the issues raised. Therefore, if a motion to suppress evidence is overruled, the party must still object to the evidence when it is offered at trial. *State v. McCrary*, 621 S.W.2d 266, 272 (Mo. banc 1981); *State v. Powers*, 613 S.W.2d 955, 959 (Mo.App. 1981). In the instant case, counsel did not do so when Sergeant Loring testified about the statements in question, but Movant does not attribute ineffectiveness of counsel to that failure.

2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992). Both prongs of the test must be satisfied in order to prevail on a claim of ineffective assistance of counsel. *Id.* Prejudice is not presumed from a showing of deficient performance of counsel but requires affirmative proof. *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. In proving prejudice, it is insufficient to show that trial counsel's errors had some conceivable effect on the outcome of the proceedings, but rather, there must be proof of a reasonable probability that the result would have been different but for the errors. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990).

■■■ Movant was arrested at his mother's home by West Plains Police Officer Ogden. According to Officer Ogden, Movant was read his Miranda rights promptly after being placed under arrest. An acquaintance of Movant was then brought outside the house and placed under arrest. Movant volunteered, "S ..., you don't have to do that. I'll tell you what you want to know. I'm the one that shot them both." Officer Ogden again advised Movant of his Miranda rights and that he should not make any statements he did not want to be used against him in court, to which Movant responded: "Hell, I don't care. I killed them both."[9] Once again Officer Ogden reminded him of his rights under Miranda. At the police station when Officer Ogden was placing paper bags over Movant's hands to protect them for later testing for gunpowder residue, Movant volunteered, "Hell, you don't have to go to all that trouble—I'll just tell you. I'm the one that killed them both."

When Sergeant Loring arrived he began testing Movant's hands for gunpowder residue, apparently without knowing whether Movant had asked to speak with an attorney. As Sergeant Loring began the testing process, he asked Movant what had happened and Movant said, "I shot the stupid son of a bitches." Loring asked who he was talking about and Movant said, "You know who." In

response to Loring's question about why he had shot them, he said that Dwight had called and told him to get over there and that when he arrived they were beating his brother. He then said, "I went boom—boom. And you can take it to the bank—they'll not do that any more." Sergeant Loring testified to these statements without objection. He further testified that Movant asked to speak with an attorney after these statements were made.

The first indication that Movant had requested an attorney prior to talking with Sergeant Loring was at the hearing on the motion for new trial. At that hearing Officer Ogden testified that Movant asked to talk with an attorney after making the statements to him and shortly before Sergeant Loring arrived. Movant now argues that the statements to Sergeant Loring were made after he requested an attorney and were inadmissible based on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). He contends that his trial counsel was ineffective in failing to discover this evidence and obtain suppression of the statements made to Sergeant Loring.

Movant's trial counsel did file a motion to suppress statements on the theory that he was interrogated after requesting counsel. That motion was overruled after a hearing at which there was no evidence that Movant had requested counsel until after he made the statements to Sergeant Loring. At that time, Officer Ogden was not asked if Movant had requested an attorney before talking with Sergeant Loring.

At trial, Officer Ogden testified after Sergeant Loring. When he was asked by the prosecutor whether Movant made any additional statements while being transported from the police department to the sheriff's office, after talking with Sergeant Loring, defense counsel's objection was sustained based on the fact that Movant had previously requested an attorney. This, however, apparently referred to the testimony of Sergeant Loring that Movant requested counsel after making the statements to him.

9. There is no contention that Movant was referring to anyone other than Thompson and Falkner. He apparently believed that Falkner had also died.

▮ There is no contention that the statements made to Officer Ogden were inadmissible. Therefore, these statements by Movant were properly introduced in which he admitted the shootings. Additionally, Movant himself testified that he shot both Thompson and Falkner when they started for him after he saw them beating his brother. Movant argues that the statements to Sergeant Loring were not cumulative because they inject lack of credibility, absence of remorse, and perhaps even bragging about the events. The same could be said, however, about the statements made to Officer Ogden, although they were couched in more temperate language. Failure to object to cumulative evidence cannot be the basis for ineffective assistance of counsel. *Kennedy v. State,* 771 S.W.2d 852, 858 (Mo.App.1989). In addition, when a defendant's testimony is cumulative to evidence which might have been suppressed, the error, if any, is harmless. *State v. Nunn,* 646 S.W.2d 55, 57 (Mo. banc 1983); *State v. Sanders,* 473 S.W.2d 700, 703–704 (Mo.1971).[10]

▮ The benchmark for judging a claim of ineffectiveness is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–693. We are unable to conclude, in the instant case, that there was a reasonable probability that the result would have been different had defense counsel discovered the basis for suppression now urged and presented it to the trial court.

This point is denied.

The judgment of the trial court and the order of the motion court are affirmed.

FLANIGAN, P.J., and CROW, J., concur.

---

10. It should also be noted that the statement to Sergeant Loring injected the beating of his brother Dwight as the reason for the shooting. In this respect, it corroborated Movant's claim that the shooting was justified by the reasonable appearance of a need to defend Dwight.